WALTZER, Judge.
STATEMENT OF THE CASE
On 13 May 1998, the trial court dismissed for failure to state a cause of action the petition[1] for preliminary and permanent injunction filed by Dwayne Smith, Wilson Morton, et al against John D. Johnson, Dianne Dumas, et al, arising out of a dispute as to the identity of the board of directors of the Ninth Ward Housing Development Corporation (NWHDC). The trial court noted in its reasons for judgment that petitioners’ proper remedy was a writ of qua warranto or of mandamus. There is no indication that this judgment was appealed.
NWHDC and two of its purported officers and directors, Smith and Morton, on 7 July 1998 filed a petition for writ of quo warranto by ordinary proceedings, bearing # 98-11785 on the docket of Civil District Court for Orleans Parish. NWHDC, Smith and Morton contend that Smith and Morton are the only duly elected directors of NWHDC and seek a declaration that the following have no legal right to the directorships nor offices in NWHDC claimed by them: Jon D. Johnson, Dianne Dumas, James Johnson, Richard Caiton, Claude Mitchell, Lester_[¿Mornay and Charles LePage. The record does not contain a request for or return of service on any of the defendants.
On 24 August 1998, Caiton, individually and as an officer and director of NWHDC filed a petition for writ of quo warranto against Smith and Morton, seeking a declaration that Smith and Morton have no legal rights to the offices they claim in NWHDC. This case bears # 98-14858 on the docket of Civil District Court for Orleans parish. Caiton requested service on Smith and Morton through Smith, as counsel of record in #98-11785. A Sheriffs return in the record shows personal service on Smith on 16 September 1998.
Although there is no evidence that he or any of his co-defendants were served, Cai-ton answered the petition in # 98-11785 on 25 August 1998. On 27 August 1998, Cai-ton filed a motion and order for security for costs. At some time between August and 15 October 1998, the two cases were consolidated[2]. Smith and Morton obtained a continuance of a hearing set in the consolidated cases. The trial court heard testimony on 10, 12, 17 and 18 November 1998 and rendered judgment in favor of Smith and Morton on 23 December 1998. *675 From that judgment, Caiton and NWHDC appeal. We sever the cases, reverse the judgment in # 98-14858 and remand # 98-11785.
STATEMENT OF FACTS
Defendants submitted corporate minutes in support of their position:
1311 January 1994: Attendance: Dumas, Caiton, Senator Johnson and Janice Smith. There is no identification of which of these attendees were board members.
23 March 1994: Attendance: Dumas, Morton, Caiton, Janice Smith, Dwayne Smith, Kassandra Brown and Charles McCrary. Again, there is no designation of board members. In the body of the minutes, Brown is identified as an accountant, Janice Smith as Program Coordinator and McCrary as Director of Housing.
10 April 1994: Attendance: Morton, Caiton, Senator Johnson, Janice Smith and Dwayne Smith, without designation of board membership.
16 July 1994: Attendance: Senator Johnson and Janice Smith, and stating that the meeting was cancelled due to lack of attendance. An illegible signature appearing to contain two large J’s appears at the end of the minutes. .
16 July 1995: There is no list of attendees. In the body of the minutes, Dwayne Smith is referred to as President. Caiton made and Janice Smith seconded a motion to approve the minutes of the previous meting. Dumas made and Janice Smith seconded a motion that the meeting be adjourned. Dumas signed these minutes as secretary.
10 October 1995: There is no list of attendees. In the body of the minutes, Dwayne Smith is referred to as President and Dumas signed the minutes as secretary.
16 November 1997: This unsigned document states the meeting lacked a quorum. Informal discussion was held on the Louisiana Housing Finance Agency’s disposition of properties to the HDC.
Plaintiffs submitted the following minutes in support of their position:
10 September 1994: Attendance: Dumas, Morton, Senator Johnson, Caiton, Janice Smith, Dwayne Smith, Charles McCrary and Charles Brown. There is no designation of which of these were board members. Senator Johnson nominated and Morton seconded Smith to serve as President; Dumas was elected secretary, Caiton treasurer and Morton vice-president. Smith moved and Dumas seconded that McCrary “come on board as an employee with the corporation.” It is unclear whether the intention was that he serve on the board or | .¿whether this was a colloquialism to describe his employment. Caiton made and Morton seconded a motion to adjourn the meeting. The minutes were unsigned.
16 July 1995: No attendance was stated. Smith is identified as president. Caiton made a motion seconded by Janice Smith to accept the minutes of the previous meeting. Dumas signed the minutes as secretary.
11 January 1996: No attendance was stated. Smith is identified as president, Dumas as secretary. Caiton made a motion seconded by Cornelius Castain to approve the minutes of the previous meeting. Dumas signed the minutes as secretary.
20 April 1996: No attendance was stated. Smith is identified as president, Dumas as secretary. Caiton made a motion, seconded by Janice Smith, to accept the minutes. Dumas signed the minutes as secretary.
*676 10 October 1997: Attendance: Dwayne Smith, Senator Johnson, Caiton, Morton, Janice Smith and James Johnson. Smith is identified as president. Senator Johnson made a motion seconded by Caiton that the minutes be accepted. Smith made a motion seconded by Senator Johnson that the corporation solicit weekly audit reports. Under “Old Business”, the minutes make the following reference: “Members were given an update on the Louisiana Housing Finance Agency’s (LHFA) disposition of properties to the corporation by board president Dwayne Smith and member Jon Johnson.” Under “New Business,” the minutes note, “It was moved that James Johnson be accepted as a new board member to fill a vacancy by John Johnson and seconded by Richard Caiton.” The motion to adjourn was made by Morton and seconded by James Johnson. These minutes are unsigned.
23 May 1998: The minutes recite, “Members presented were: Dianne Dumas, Richard Caiton, Jimmy Johnson and Jon Johnson.” Caiton made a motion seconded by James Johnson to accept Dangerfield’s resignation from the board. Caiton made a motion seconded by Dumas to remove Smith as board president. Dumas made a motion seconded by “J. Johnson” [it is uncertain whether this refers to Jon or James] to remove Morton as vice-president of the board. Dumas made a motion seconded by Caiton to remove “old board members” as of 23 May | fi1998. An unidentified person made a motion seconded by Caiton to elect Lester Mornay and Charles LePage to the board. Caiton made a motion seconded by “J. Johnson” to Qleet Claude Mitchell as president. The minutes recite that the new board members are Mitchell, James Johnson, Dumas and Caiton. Dumas signed the minutes as secretary.
Dwayne Smith testified that he was elected to the NWHDC board approximately four years earlier, but could not recall the specifics of the meeting at which he was elected president, except that he believed Senator Johnson was present. According to Smith, Senator Johnson was not a board member at that time. Smith’s recollection was not refreshed by an unsigned copy of the minutes of the 10 September 1994 board meting. Smith recalled that Senator Johnson was a member of the NWHDC board prior to 1994. He was never at a meeting at which Senator Johnson resigned from the NWHDC board and was never at a meeting at which Senator Johnson was removed from the board.
According to Smith, before his election as board president, sometime in 1994, Senator Johnson resigned from the board. Smith learned of the resignation, which did not occur at a board meeting at which Smith was present. An official of the Louisiana Housing Finance Agency (LHFA) advised him that there would be a problem if Senator Johnson remained on the board and it would be necessary for him to resign. NWHDC’s documents presented to the LHFA, documenting the official board, reflected that Senator Johnson was no longer on the board. According to Smith, although there was no formal, written or oral resignation, Senator Johnson “let it be commonly known that he was no longer on the board.” | fiFrom that point on, when NWHDC submitted documents to third parties, Senator Johnson was not named as a board member.[3]
Smith testified that Caiton was elected a director of NWHDC. Smith did not recall Caiton’s having been removed from office by the NWHDC board or Caiton’s having *677 resigned from his directorship. Smith admitted that Caiton was a member of the board in 1996.
Smith testified that he believed Dianne Dumas was a member of the NWHDC board when he was elected president. Smith never saw a written resignation from Dumas, but believed (although he had no specific recollection) that she was replaced by “Mr. Bell” at a board meeting held during his presidency. Smith was shown original NWHDC minutes of a 16 July 1996 board meeting, signed by Dumas as “Secretary, Board of Directors.” Smith did not recall having seen these minutes and could not testify to the exact date of Dumas’ alleged resignation. Smith testified that there was a board meeting at which Dumas’s resignation was discussed and accepted; however, he could not recall the date or who attended the meeting, and denied that a formal vote was taken.
Smith was shown a document that purported to be minutes of an 11 January 1996 board meting, signed by Dianne Dumas. Smith testified that he had no specific recollection of that meeting and felt strongly that the minutes were fraudulent. According to Smith, Cornelius Castain, identified as the person who seconded approval of the minutes, was an employee, but not a director of the corporation.[4] Smith testified further that he was certain that he was not at a meeting on that date wherein the board discussed contacting Councilwoman 17Pistance for assistance in obtaining funds for day care. According to Smith, the board did not always keep regular minutes; often, notes were taken but were not formalized as minutes.
Smith was shown what purported to be minutes signed by secretary Dianne Dumas of an NWHDC board meeting of 20 April 1996. He had no specific recollection of the meeting, and testified that he had never seen the minutes before and found them also to be suspect. According to Smith, Janice Smith, identified in the minutes as having seconded approval of the minutes, was not then a board member. Smith also testified that he believed he could see an imprint of an earlier Dumas signature on the minutes. He also found the minutes suspect because they did not recite board attendance, and said that the board unanimously voted to hire a consultant immediately to assist its staff with the housing program. Smith testified that he never voted to hire a consultant.
According to Smith, the minutes were usually signed by the secretary, and listed the board members in attendance.
Smith was shown what purported to be unsigned minutes of a 10 October 1997 meeting of the NWHDC board, according to which James Johnson was appointed to fill a vacancy on the board. Smith denied having any specific recollection of a board meeting in Fall, 1997. However, Smith did recall a meeting at which James Johnson was nominated and elected to the board. At that time, the board consisted of Smith, Morton, David Bell, James Johnson and Richard Caiton. Smith had no knowledge of James Johnson’s having resigned or having been removed from the board. Smith questioned the validity of these minutes, because they show that Senator Johnson moved acceptance of the minutes. According to Smith, Senator Johnson was np longer a board member at that time. Furthermore, [RSmith denied having attended any meeting at which Asif Gafur was hired as the NWHDC auditor and did not participate in any discussion of that hiring. Although Smith testified that he did not learn of Gafur’s hiring until *678 some time after the controversy concerning the board, he identified NWHDC check #4364 payable to Gafur for $3,000 “For Audit Services for Year Ended 6/30/97 Final Billing.” He testified that the check bore either his signature or an authorized stamp imprint of his signature. Smith denied that he necessarily would have examined the supporting invoice pri- or to signing or allowing his signature stamp to be used on the check.
Smith identified a copy of a notice of a special meeting of the NWHDC board for removal of old board members and election of a new board, to be held on 23 May 1998. The notice was signed by Dianne Dumas, Director/Secretary, by directors Senator Johnson, Caiton and James Johnson, and assistant secretary Janice Smith. Attached to the notice were photocopies of return receipts showing delivery of the notice to Morton and to Smith on 19 May 1998. Smith testified he did not attend the meeting. Smith knew at the time that Richard Caiton and Senator Johnson were board members at that time[5] but denied that Dumas was a director or secretary of NWHDC at the time. Smith identified a copy of excerpts from minutes of the special board meting held on 30 May 1994, signed by secretary Dumas. The excerpts showed amendment of two articles of NWHDC’s by-laws providing for reservation of one-third of directorships for residents of low-income neighborhoods, other low-income community residents, or elected representatives of low-income neighborhood organizations within the greater New | nOrleans area. The amendment also provided for a formal process by which low-income, program beneficiaries could advise the corporation in all of its decisions regarding the design, siting, development and management of housing projects.
He identified an attached affidavit showing Dumas’s acceptance of appointment as NWHDC’s[6] designated registered agent as of 21 July 1994. He also identified attached copies of the corporation’s annual reports as they were filed with the Louisiana Secretary of State’s office. According to those reports, in 1992, the registered agent was Senator Johnson, and directors were Senator Johnson, Morton and Dumas. In 1993, the same agent and officers were shown, and Dumas’s address was changed. In 1994, the registered agent was Dumas, and the directors were Smith (president), Morton (vice-president) and Dumas (secretary). The 1995 report was unchanged except for the addition of Cai-ton as Treasurer. In 1996, the registered agent was Janice Smith, and Dumas’s name was struck out on the report.
Smith identified Exhibit D-6, records of Hibernia National Bank submitted to and notarized by counsel for Smith and Morton, a depository authority certificate of NWHDC, First Time Homebuyers’, Home Owners’ Program (signature card) bearing Smith’s signature. The Hibernia document showed Smith to be president; David Bell, secretary; Janice Smith, program coordinator; and Claude Mitchell, liaison. Smith identified his signature on the document, recalled having signed it, and testified that the document was submitted to the bank in Fall of 1997.[7]
*679 |10Smith identified Exhibit D-8, which documented the Section Eight housing assistance payment program of the United States Department of Housing and Urban Development.[8] The parties stipulated that Smith is a licensed attorney who acted as counsel for NWHDC, and as president and as an employee of the corporation had dealings on behalf of the corporation including the attempt to obtain property from the State. Smith testified that state LHFA officials cited to him certain portions of the HUD document prohibiting elected officials from serving on the boards of contracting non-profit organizations. He then discussed the matter with Senator Johnson, advising the Senator that he must resign from the NWHDC board.
Smith testified that in his opinion he is still the president of and a member of the board of NWHDC.
Daria Faciane testified that for the last nine years she has been employed by NWHDC, responsible for typing contracts, handling correspondence, filing and answering telephone calls. Although she attended no board meetings, she typed board minutes from notes given to her by Janice Smith. According to Faciane, there was no standard format for board minutes. After having completed the minutes, Fa-ciane would destroy Janice Smith’s notes. She testified only that she could have typed the minutes of 10 September 1994, but was not sure, and that the minutes of the 16 July 1995 meeting looked like the type of document that she typed as meeting minutes. Indeed, all of the minutes she was shown were consistent with the minutes she typed for the corporation, except for the minutes of In 10 September 1994 and of 10 October 1997. The margins of those minutes were not justified, as was Faciane’s practice.[9]
Faciane testified that she kept an updated list of board members, with information provided by Janice Smith. She testified that she knew Dumas, James Johnson, Senator Johnson and Caiton were on the board and that she never typed anything or saw any minutes or other corporate documents that would indicate that any of them resigned or were removed from the board.
Faciane confirmed that she typed the notice of the special meeting of May 1998 on instructions of Janice Smith. She also prepared the corporate annual reports and sent them to the Secretary of State annually. She denied having scratched out anyone’s name on such a form, and could not remember having sent a report to the Secretary of State, with a name or names stricken. This testimony was later contradicted by Faciane when she testified that she did not type the names on the annual reports to the Secretary of State, since the documents came to her with the names already typed in, but that she corrected Dumas’ address on the 1993 annual report.
Faciane testified that she struck through Senator Johnson name and address on the 1994 annual report and added Smith’s name and address as president, and designated Morton as vice-president. She made these changes at Janice Smith’s direction. Smith advised her that Senator Johnson was no longer president or a director of NWHDC.
*680 Faciane denied having typed the excerpts from the minutes of 30 May 1994 amending Articles XVII and XVIII and the affidavit by Dumas accepting | ^.appointment as registered agent of NWHDC. She .testified that she also typed documents for the Hibernia Bank, such as the signature card in evidence. All information she typed came from Janice Smith.
Faciane identified as her typing a letter addressed to Smith dated 13 April 1998 giving notice of a meeting for election of officers and appointments to fill any board vacancies. Again, Janice Smith told her to prepare the letter. She denied having typed notice of a 24 March 1998 board meeting, which shows Smith, Morton, James Johnson, Bell and Caiton as the directors. She also denied having typed two letters, dated 17 March 1998, in which Smith called a board meeting for 24 March 1998 and withdrew authorization for use of his signature stamp.
Faciane testified that she typed the minutes of the 10 October 1995 meeting, and of the 16 July 1995 meeting in which Smith appears as president and Dumas as secretary. She recalled having typed minutes of 11 January 1994, showing Dumas, Chi-ton, Senator Johnson and Janice Smith present.
Faciane testified that she recalled a chaotic day the previous Spring when Smith and others came into the offices trying to take files. Smith started in the accounting department and tried to take the filing cabinets. He did not try to remove the corporate minutes, which were in her office. She kept the minutes, the list of directors, by-laws and administrative files in her office at Janice Smith’s request.
Wilson Morton testified that he has been associated with NWHDC for possibly fifteen years as vice president of the board of directors. In January, 1998, the board consisted of Caiton, Smith, Bell, James Johnson and Morton, himself. |13To the best of his knowledge, Caiton and James Johnson never resigned nor were they removed from the board.
Morton could not recall a board meeting held on 8 August 1980 at which the NWHDC charter was amended to provide for at least fifteen and no more than twenty-five board members. He “vaguely” remembered the meeting of 29 September 1988 at which Senator Johnson was named registered agent; Senator Johnson, Morton, Dumas, Caiton and Melevet Dangerfield[10] were named directors; and the board was reduced to at least five but no more than seven members.
Morton could not recall exactly when Senator Johnson was removed from or resigned from the board, but thought this occurred at the meeting at which Smith was elected board president. He recalled that there was a meeting, perhaps in 1994, when Senator Johnson stepped down from the board. He testified that Smith was present at that meeting. This contradicts Smith’s denial of specific memory of the Senator’s having resigned at a board meeting. It is also contradicted by Morton’s subsequent testimony that Smith replaced Senator Johnson as president, but that Senator Johnson stepped down only from the office of president, and not from his position as a director. Morton knew of no formal oral or written resignation.
Morton recognized the signatures of Senator Johnson as president, of Smith as a witness and of Dumas as secretary on Amendments to the NWHDC’s articles of *681 incorporation dated 9 July 1994. That document named Dumas as registered agent and provided that the board would consist of up to seven members, without a stated minimum number of directors. Directors’ qualifications and quorum [ ^requirements were referred to the bylaws. Smith acknowledged in writing that in July, 1994, Senator Johnson was president and Dumas was secretary and registered agent.
Morton testified that he was present at a board meeting in 1995 at which Dumas resigned as secretary and director. He later recanted that testimony, and said that he was told by “unknown persons” that Dumas was no longer on the board and that she had stepped down “for unknown reasons.” According to Morton, Bell replaced Dumas on the board and as secretary.
According to Morton, sometime after Smith became president, possibly in 1996, Senator Johnson nominated Bell to serve on the board. Therefore, Senator Johnson was still on the board some time after Smith had become president.
Morton testified that it appeared from the notice of special meeting that Dumas had come back on the board in May, 1998. Morton reviewed the notice and concluded that of the five signatories, only Caiton and James Johnson were then directors of NWHDC.
Morton admitted that he received prior notice of the special meeting called for 23 May 1998 to elect new directors, but chose not to attend.
Dianne Reese Dumas testified that she has been a director of NWHDC for more than ten years, and did not resign from the board. She was unaware of any board meeting at which she was removed from the board. She identified Senator Johnson, Morton, Caiton, Dangerfield, James Johnson and herself as directors as of January, 1998 and testified that Senator Johnson was always a member of the board.
J^Dumas testified that the suggested interpretation of the 10 October 1997 minutes to imply the Senator Johnson was replaced on the board by his brother was erroneous. However, the minutes read as follows:
NEW BUSINESS — it was moved that James Johnson be accepted as a new board member to fill a vacancy by Jon Johnson and seconded by Richard Cai-ton. A unanimous vote was taken thus making James Johnson a member of the Ninth Ward Housing Development Corporation’s Board of Directors.
A clear reading of the minutes reflects that the motion to elect James Johnson was made by Senator Johnson and seconded by Caiton, and the reference to a vacancy does not necessarily imply that the vacancy was caused by the Senator’s removal or resignation from the board. Indeed, if the Senator were no longer a board member, he could not have made the motion to elect his brother to the board. In light of the amended articles of incorporation, clearly the “vacancy” refers to the lack of the maximum number of seven directors authorized by the articles then in effect.
On cross-examination, Dumas was questioned about the authenticity of her signed minutes of three board meetings, held on 16 July 1995[11], 11 January 1996 and 20 April 1996. The trial judge held the documents to the light and found impressions *682 from the signatures from the minutes of April, 1996 and July, 1996 overlaying the signature on the minutes of 11 January 1996. Dumas was unable to explain the impressions pointed out by the trial court.
Dumas was unable to locate any minutes from the over ten years she had been a director other than those that were introduced at the trial. She disavowed |1ñknowledge of the location of the minutes supporting the articles of incorporation and various amendments thereto.
When questioned concerning the strike-through of Senator Johnson’s name on the Annual Report for 1994, Dumas identified her signature and testified that she was unaware of any reason why Senator Johnson’s name was scratched off, since he was still serving as a director at the end of 1994.
Dumas identified the notice of the May, 1998 special board meeting, and identified on the notice the signatures of fellow board members Senator Johnson, James Johnson and Caiton, and the signature of program director Janice Smith. According to Dumas, she attended the meeting, which was held as specified in the notice, with Senator Johnson, James Johnson and Caiton. She identified her minutes of the meeting, which noted the presence of attorney James Gray as well. She also identified the following resolutions passed at that meeting by unanimous vote of the four directors present:[12]
1. that James Johnson be elected Treasurer;
2. that Dianne Dumas be elected Secretary;
3. that Richard Caiton be elected Vice-President;
4. that Claude Mitchell be elected President;
5. that the affidavit of Melevet Dangerfield be accepted as a resignation from the board;
6. that Dwayne Smith be removed as president;
7. that Smith be removed for cause as a director for actions deemed to be against the best interest of the corporation;
8. that the term of the old board be deemed ended at the end of the meeting of 23 May 1998 in which a new board will be elected;
9. that the new board will consist of Lester Mornay, Charles LePage, Claude Mitchell, Richard Caiton, Dianne Dumas, James Johnson and [written in by hand] Senator Johnson.
[ 17According to Dumas, Senator Johnson was in fact elected as a director, and the typist inadvertently left off his name from the resolution. However, the minutes Dumas identified provide in pertinent part:
Dianne Dumas moved to remove old board members as Directors of Housing Development as of May 23, 1998, at which time new board members will be voted upon. It was seconded by Richard Caition [sic]. The motion was carried. It was moved to name Lester Mornay and Charles Lepage [sic] as new members of the board. It was seconded by R. Caition [sic]. The motion was carried. R. Caiton moved that Claude Mitchell be elected as President. It was seconded by J, Johnson. The new board members are: Claude Mitchell, President!;] James Johnson, Treasur *683 er[;] D. Dumas, Secretary!;] and Richard Caiton, Vice-President.
Therefore, it appears from the minutes, which Dumas signed and which she identified at trial, that if the special meeting were called properly and if the four persons who voted at that meeting were directors of NWHDC, the new board consisted of either four members: Mitchell, James Johnson, Dumas and Caiton, or at most, six members, if Mornay and LePage are included.
Dumas identified a letter from Smith dated 22 May 1998 acknowledging receipt of the notice of the special meeting by certified mail, facsimile and hand delivery, and reciting:
As I have expressed before, Senator Jon Johnson and Ms. Dianne Dumas are not members of HDC’s board. Therefore, the meeting is not properly called nor authorized.
I have asked my attorney to prepare the necessary documents to remedy this situation; they will be filed in the coming days.
|1RThe letter shows copies to James Gray, II, Senator Johnson, Dumas, Morton, Cai-ton, James Johnson, Bell and LeRoy Hart-ley, counsel for Smith and Morton in the instant case.
Janice Smith testified that she has been employed by NWHDC for approximately five years. As program coordinator, she oversees the corporation’s programs and usually attends the board meetings and takes notes for the minutes in the absence of Daria Faeiane. She identified and specifically recalled the minutes of the meeting of 10 September 1994, and identified as minutes those of 16 July 1996, 11 January 1996 and 10 October 1997. She obtained these documents from files in the corporation’s administrative office.
According to Ms. Smith, the vacancy filled by James Johnson was not created by the Senator’s removal or resignation. There was an existing vacancy on the board for which Senator Johnson nominated his brother.
She admitted having signed the notice of the special board meeting of 23 May 1998 and testified that she sent the notice by certified mail, facsimile and by hand to Smith and to Morton to insure that they would attend the meeting.
Janice Smith confirmed Dumas’s testimony concerning the special meeting, for which Dumas took minutes. Ms. Smith testified that Dumas, Senator Johnson, James Johnson and Caiton were the board members present. Ms. Smith confirmed that the vote terminating the old board and replacing them passed by a unanimous vote. She confirmed Dumas’ testimony that Senator Johnson’s name had inadvertently been left off the listing of the new board members, Lester Mornay, Charles LePage, Claude Mitchell, Richard Caiton, Dianne Dumas and James Johnson. We note that this certified copy of the resolution appears to be inconsistent with the listing of only Mitchell, James Johnson, Dumas and Caiton as |19new board members. No explanation was offered for the discrepancy. Ms. Smith was unaware of any meeting at which Senator Johnson and/or Dumas were removed from or resigned from the board.
Ms. Smith testified that Senator Johnson continued to participate in board meetings after Dwayne Smith was elected president of the board. Neither Dwayne Smith nor Morton ever objected to the Senator’s participation. She denied that James Johnson came on the board to replace Senator Johnson. She testified that, although she often attended board meetings, she was never a member of the board, and that the portions of minutes *684 indicating that she made or seconded motions were incorrect. She denied that Senator Johnson had any input in the production of the corporate minutes.
Caiton testified that he has served since 1979 or 1980 on the NWHDC board as a civic responsibility, and has no other connection with the corporation or any related corporations or corporations housed in the NWHDC office building.
Caiton identified a corporate resolution dated 8 August 1980[13] listing the following directors: Caiton, Morton, Janice Barton, Dianne Reese (now Dumas), Senator Johnson, a person surnamed Glapion and Eddie Camise, and a person whose signature the witness could not identify. Caiton testified that Glapion and Camise are deceased, but he could not recall how or if their board seats were filled.
Caiton identified the 29 September 1988 amendment to the corporate charter that named the following as board members: Senator Johnson, Morton, Dumas, Caiton and Dangerfield, but could not recall whether he had attended the meeting [ ¡>nat which the amendment was adopted. Cai-ton identified the 9 July 1994 charter amendment, but could not recall whether he was present at its adoption.
According to Caiton, in January, 1998, the board consisted, of Senator Johnson, Morton, Smith, Dumas, James Johnson and Caiton, himself. Neither , Senator Johnson nor Dumas resigned or was voted off the board, to the best of his knowledge.
Caiton testified that he was present at the meeting in which Smith was elected president, that he seconded Senator Johnson’s nomination of Smith, and that Smith did not take the Senator’s place on the board. The Senator continued to participate continuously after that meeting.
Caiton testified that he signed the notice of the May, 1998 special board meeting. The directors wanted to' “moré or less force the resignation of Dwayne [Smith] and Wilson Morton, because they were really creating a problem to the corporation” through litigation.
Caiton identified a copy of the corporate by-laws. The by-laws provide in pertinent part:
VACANCIES
A Vacancy existing by reason of the resignation, death, incapacity or removal of a Director before the expiration of his term shall be filled by election at a special meeting of the remaining members of the Board of Directors.
RESIGNATION
A Director may resign at any time by giving written notice to the President of the Board or the Secretary. Any resignation shall take effect at the time received unless another time is specified in such notice. Unless otherwise specified in such notice, the acceptance of a resignation shall not be necessary to make it effective.
U, REMOVAL
A Director may be removed only with just cause and with proper notice and by a vote of two-thirds of the Directors present and voting.
*685 MEETINGS OF THE DIRECTORS

Notice of Meeting and Waiver

Notice of each meeting of the Board of Directors shall be mailed to each Director at his address last appearing on the records of the corporation, or before the seven (7th) day before the day on which the meeting is to be held. Notice of any meeting may be waived by any Director in writing, either before or after the holding of such meeting. Notice of a meeting shall be deemed waived by attendance of a Director at such meeting unless he signifies at such meeting that his attendance is for the purpose of objections thereto on the grounds that the meeting was not lawfully called or convened.
MEETINGS OF DIRECTORS

Quomm, Manner of Action and Adjournment

At each meeting of the Board of Directors, the presence of at least one-third Qh) of the Directors then holding office, disregarding any unfilled vacancies which may then exist, shall constitute a quorum for the transaction of business provided that, except at a meeting called for the purpose of filling vacancies in the Board at a time when there are less than three (3) remaining Directors, the presence of at least three (3) Directors shall be required.... [Emphasis added.]
The return receipts show delivery of the special meeting notices to Smith and to Morton on 19 May 1998. The notice itself is not dated and there is no independent evidence tending to show the date the notices were mailed. Likewise, there is no evidence as to when Morton and Smith received the hand-delivered, facsimile or telephonic notices of the special meeting.
The parties stipulated that if Senator Johnson were called he would testify that he hag been & member of the board of NWHDC for many years, he never | ^resigned or was voted off the board. Specifically, in the minutes of the October, 1997 meeting, he made a motion to nominate his brother to fill a vacancy, but not his own vacancy. He would also testify that Bell was never a member of the board.
The testimony of the witnesses was unequivocal that although the corporate charter originally called for between fifteen and twenty-five board members, that minimum number was never reached. Likewise, although the by-laws called for regularly scheduled monthly board meetings, the board actually met only three to four times each year, and at irregular intervals. Furthermore, minutes were kept intermittently, and not all meetings were memorialized.
At the conclusion of trial, counsel agreed with the trial court’s conclusion, “The only issue before me is whether or not Dwayne Smith and Wilson Morton are members of the board or [by] what authority they profess to be members of the board.”
TRIAL COURT ACTION
The trial court found that the special meeting of 23 March 1998 was improperly called, and, therefore, Dwayne Smith and Morton were not removed from the board. The trial judge based this conclusion on the following fact findings:
1. Caiton established a prima facie case that:
(a) a special meeting was noticed to be held on 23 May 1998 for the purpose of removing the board and electing a new board;
laaQb) the minutes of that meeting reflect that Dumas called it to order and members *686 Caiton, James Johnson, Senator Johnson and Dumas were present;
(c) at the meeting Caiton moved and Dumas seconded a motion that Smith be removed as president; Dumas moved and Caiton seconded a motion to remove old board members; Dumas moved and one of the Johnsons seconded a motion that Morton be removed as vice-president. All motions carried.
2. Smith and Morton failed to prove that the minutes submitted by plaintiffs were fabricated.
3. The notice of the special meeting was mailed within the time frame dictated by the by-laws.
4. The corporation “kept shabby records and often operated contrary to its bylaws and articles of incorporation.”
5. The corporation’s annual reports to the Secretary of State, from 1994 through 1996 do not include Senator Johnson as an officer or director.
6. The corporation’s annual report to the Secretary of State for 1996 does not include Dumas as an officer and substitutes Janice Smith for Dumas as registered agent.
7. According to the by-laws, a director may be removed only with just cause and proper notice and by a vote of two-thirds of the directors present and voting. However, a director may resign at any time by giving written notice. Acceptance of a resignation is not necessary.
| ¡>48. The court accepted Dwayne Smith’s testimony that for reasons pertinent to a pending program/project it was in the corporation’s best interest that Senator Johnson not be on the board. Subsequently, in September 1994, Smith was elected president. It is uncontroverted that Senator Johnson made the motion and that as of that time, Senator Johnson was no longer president.
9. Persons who were not board members were often present at the board meetings and, on several occasions, Janice Smith, who was not a board member, made or seconded motions.
10. The 1994 Annual Report removing Senator Johnson’s name as director and registered agent support’s Smith’s testimony that, in connection with a pending project, it was in the corporation’s best interest that the Senator not be a member of the board.
11. According to Smith’s testimony and in compliance with LSA-R.S. 12:205.1(A)(3), the annual reports listed all directors of the corporation. The corporation having made such declarations and having filed these reports, its alleged directors are estopped from asserting a contrary position.
12. Dumas failed to prove by a preponderance of the evidence that she had not resigned.
13. The by-laws do not require that Dumas resign in writing or that there be a board vote accepting her resignation.[14]
| ¡>s14. There is no evidence that Dumas and Senator Johnson were reinstated as board members.
15. The by-laws provide that special meetings shall be called by the president or by the secretary upon the request of three or more directors. Because the notice was signed by only one board member, Caiton, the notice is defective and the meeting was called improperly.
*687 16. The by-laws require that at least one-third of directors then holding office be present, provided that at least three directors are present. At the time of the special meeting, the board consisted of Smith, Morton and Caiton. Therefore, no quorum was present at the special meeting.
STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can | ¡>sbe aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
However, where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest or clear error even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Our review of the record in its entirety convinces us that the trial court’s credibility findings are not unreasonable and that the findings of fact are, generally, supported by credible evidence. However, we note that the trial court’s conclusion that Dumas and Senator Johnson were no longer directors is manifestly erroneous, in the absence of any evidence that either director resigned in writing or was removed by board action as provided in the by-laws. The corporation’s by-laws do not allow a director to resign at any time otherwise than by giving written notice. As noted above, the by-laws provide, “A Director may resign at any time by giving written notice to the President of the Board or the Secretary.” (Emphasis added.) We find nothing in the by-laws rescinding this writing requirement. Since Smith and Morton offered no evidence of Senator Johnson’s written resignation, we must conclude that the trial court erred as a matter of law in having found that Senator Johnson and Dumas resigned.
Furthermore, the trial court’s ultimate conclusion that Dumas, James Johnson and Senator Johnson were removed by operation of the corporation’s annual reports to the Louisiana Secretary of State flows from the legally erroneous conclusion that an incorrect listing of directors operates to remove duly elected directors whose names do not appear on the report. Where, as in the present case, | atrial court legal errors have tainted the fact finding process, the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a de novo review of the record and determine the preponderance of the evidence. Rosell v. ESCO, 549 So.2d 840, 844 fn. 2 (La.1989); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); McLean v. Hunter, 495 So.2d 1298, 1304-05 (La.1986). *688 We have conducted such a review of the record.
FIRST ASSIGNMENT OF ERROR: The trial court erred in consolidating the summary proceeding and the ordinary proceeding.
Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings. LSA-C.C.P. art. 2591. Summary proceedings may be used for trial or disposition of a quo warranto proceeding. LSA-C.C.P. art. 2592(6). Citation and service, and formal answer are not generally required in summary proceedings. LSA-C.C.P. arts. 2592 and 2594.
The quo warranto writ directs an individual to show by what authority he claims or holds, inter alia, office in a corporation. Its purpose is to prevent usurpation of office or of powers. LSA-C.C.P. art. 3901. When the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so and may declare who is entitled to the office and, when necessary, direct an election. LSA-C.C.P. art. 3902.
| {.¿While the petition in # 98-11785 refers to itself as an “ordinary proceeding”, we note that no request for service was made. The petition in # 98-14858 is silent as to whether it is an ordinary or summary proceeding; however, service was requested on Smith and Morton through Smith, who appeared pro se in the earlier-filed case. Judge Ramsey ordered that the quo tvaiTanto writ should issue in # 98-14858, fixed a hearing date of 9 September 1998 and required an answer by that date. However, the record copy of the actual writ is undated, does not bear the clerk’s signature, and does not indicate that service was requested or made.
At the beginning of the 10 November 1998 hearing, counsel for Smith and Morton objected that the writ had never been signed and served on his clients. He also objected to the consolidation of his clients’ ordinary proceeding with Caiton’s summary proceeding. Counsel for Smith and Morton admitted that it was he who had moved for consolidation of the two proceedings, over the objection of counsel for Caiton. The trial judge acknowledged that Caiton had a right to proceed summarily and that Smith and Morton had a right to proceed ordinarily. She then stated that she had consolidated the cases because of their common issues, and set only the summary proceeding for trial. The trial judge later reiterated that the ordinary proceeding was not going forward at that time. Counsel for Caiton noted, “[Wjhat we’re here doing today is to decide on our summary proceeding.” In her reasons for judgment, the trial judge noted, “There was a summary proceeding to determine by what authority Dwayne Smith and Wilson Morton claim to be directors and president and vice president of the Ninth Ward Housing | ^Development Corporation, Inc.” We interpret this statement, in the context of the foregoing, to mean that the court was deciding only the summary proceeding, # 98-14858.
We note that in an ordinary proceeding, citation and service are required, and the parties have the right to discovery in preparation for a trial on the merits. The record does not contain any evidence of citation, service or discovery in the ordinary proceeding. Likewise, it is clear from the record transcript and from the trial court’s reasons for judgment that it was not the intention of the trial judge or of the parties that the ordinary proceeding, # 98-11785, be tried with the summary proceeding. Therefore, we sever the *689 cases and remand # 98-11785 to the trial court for further proceedings.
SECOND ASSIGNMENT OF ERROR: The court erred in finding that Jon Johnson was removed from the Board of Directors of NWHDC.
The trial court’s conclusions concerning Senator Johnson are based on its erroneous finding that the corporate by-laws allowed for other than written resignation by a director. The trial judge found that the minutes introduced by the parties were not fabricated. The minutes of 10 October 1997 refer to “member Jon Johnson.” Therefore, this constitutes uncontroverted written proof that on 10 October 1997, Senator Johnson was a member of the board. Smith and Morton have offered no evidence of Senator Johnson’s written resignation or removal by the board[15]. Therefore, there is merit to this assignment of error.
UTHIRD ASSIGNMENT OF ERROR: The court erred in finding that the 1994 annual report to the state listed all the directors of NWHDC.
LSA-R.S. 12:205.1(A)(3) provides in pertinent part:
A. On or before May fifteenth of each year, the president, treasurer, or other proper officer, or any two directors of each corporation shall make and sign in its name a report to the secretary of state, stating:
[[Image here]]
(3) The names and municipal address, which shall not be a post office box only, of all of its directors and officers, and when the term of each expires.
There is nothing in the statute requiring a corporation to file a list of all its directors that indicates a legislative intention to allow the filing to create or remove directors and officers. Although the corporation was required by statute to list all its directors, it does not follow, absent positive legislative pronouncement, that the failure to comply with the requirement can either remove duly elected officers and directors or elect them outside the requirements of the corporate charter and bylaws. Therefore, the trial court’s conclusion (number 11, supra) that the annual reports listed all directors of the corporation is incorrect as a matter of law.
LSA-R.S. 12:206, “Effect of filing or recording papers”, provides that the purpose of the filing is to afford all persons the opportunity of acquiring knowledge of the contents of the report. This section also provides that no person dealing with a corporation shall be charged with constructive notice of the contents of the reports. There is nothing in the statute that would authorize the trial court’s legal conclusion that directors are somehow es-topped from attacking the correctness of a corporate report. Indeed, such a principle would prevent the |81 corporation or its officers and directors from placing in question the correctness and validity of the report filed by any individual, whether or not a corporate officer.
Counsel for the appellee suggests an analogy to detrimental reliance by a third party who contracts with the corporation through persons named in the Annual Report who are not, in fact, corporate directors. Although the civilian doctrine of detrimental reliance might, under certain circumstances, protect such a third party, the effect of a ruling in such a case would not extend to “electing” the non-directors *690 named on the report to directorships in the corporation.
We conclude that the mere filing of a factually incorrect report does not operate as an estoppel against the corporation, its directors, officers or shareholders. A corporation whose by-laws or charter provide for qualifications and for methods of election and removal of officers and directors from their offices or directorships may not elect or remove its officers solely by a person’s making a particular filing in the office of the Louisiana Secretary of State.
There is merit to this assignment of error.
FOURTH ASSIGNMENT OF ERROR: The court erred in requiring Dianne Dumas to prove that she had not resigned.
Smith and Morton, as movers for the writ of quo toarranto, had the burden of proving that Dumas had resigned or been removed from the board. They offered no evidence of Dumas’ written resignation or of her removal. Therefore, there is merit to the appellants’ assignment of error.
|o,FIFTH ASSIGNMENT OF ERROR: The court erred in finding that Dianne Dumas was no longer a member of NWHDC’s board of directors.
Smith and Morton having failed to prove that Dumas resigned or was removed as a director, the trial court erred in its finding that she was not a director at the time of the special meeting of 23 May 1998. There is merit to the appellants’ assignment of error.
SIXTH ASSIGNMENT OF ERROR: The court erred in finding that Dwayne Smith and Wilson Morton continued to be directors of NWHDC.
The trial court’s conclusion that Smith and Morton continue as directors was based on the prior conclusion that Caiton was the only active director who signed the notice of the meeting or appeared at the meeting. In light of our having concluded that, under the applicable corporate by-laws, neither Senator Johnson nor Dumas had resigned or been removed from the board, the trial court’s ultimate conclusion is erroneous. There is merit to this assignment of error.
SEVENTH ASSIGNMENT OF ERROR: The court erred in finding that James Johnson was no longer a member of NWHDC’s board of directors.
The trial court’s conclusion that James Johnson was not a member of the board was based on its prior conclusion that Senator Johnson was not a board member at the time he moved James Johnson’s election to the board. As we have discussed previously, Smith and Morton failed to offer competent, credible evidence that Senator Johnson resigned from or was removed from the board in accordance with the corporate by-laws. There is merit to this assignment of error.
^CONCLUSION AND DECREE
The only method of resignation by a board member set forth in the corporate by-laws is written resignation. The only method of removal from the board is by formal board action. There is no evidence of compliance with either the resignation or removal provisions with respect to Senator Johnson, Dianne Dumas or James Johnson.
For the foregoing reasons, we reverse the judgment of the trial court and find that Dwayne Smith and Wilson Morton have failed to carry their burden of proving their right to serve as directors and officers of the Ninth Ward Housing Development Corporation. Costs of this appeal are assessed against appellees.
CASES #98-11785 AND #98-14858 ARE SEVERED. THE JUDGMENT OF THE TRIAL COURT IN CASE # 98- *691 14858 IS REVERSED. CASE #98-11785 IS REMANDED.
PLOTKIN, J., concurs in part and dissents in part with reasons.

. Smith, Morton et al v. Johnson, Dumas, et al, # 98-6925 on the docket of the Civil District Court, Parish of Orleans.

. The record on appeal does not document the consolidation; however, it is clear from the transcript of testimony and from the caption of pleadings filed in connection with the trial that the cases had been consolidated at the trial court level.

. Smith and Morton did not offer or introduce these alleged documents.

. We note that in several instances Janice Smith made or seconded motion. There is no evidence that she was a board member at any time.

.Subsequently, Smith testified that Senator Johnson had resigned prior to the date of the notice. We infer from the context of the testimony that counsel and Smith intended that the reference to active board members was to Caiton and James Johnson.

.The corporation was formerly known as Lower Ninth Ward Housing Development Corporation, and that name appears on the reports through the end of 1995. The 1996 and subsequent reports bear the name Ninth Ward Housing Development Corporation.

.The exhibit is missing from the record on *679 appeal. According to the testimony, two dates appear, 24 September and 9 October 1997.

. This exhibit is missing from the record on appeal. It was admitted by the trial court only as a proffer by defendants.

. Faciane did not justify right margins on documents typed prior to Spring of 1994, when the office replaced her typewriter with a computer.

. Morton testified that Dangerfield never attended a board meeting or served as a director. He identified Dangerfield's affidavit of 29 April 1998 stating he is not a member of the Board of Directors of the NWHDC and never has served as a member of that board.

. Counsel identified these minutes as having been dated 19 July 1995; however, they are clearly dated 16 July 1995, and we conclude that the oral identification by counsel was an inadvertent misstatement.

. Although each resolution is certified to have been "done at a duly called meeting held on May 22, 1998 in the city of New Orleans,” Dumas testified that the meeting was, in fact, held on Saturday, 23 May 1998, as set forth in the notice, and opined that the 22 May date stated on the certified copies of resolutions was a multiple typographical error.

. The document was identified by counsel in the transcript of testimony as Exhibit D-29, an amendment to the corporate articles of incorporation; however, Caiton did not sign D-29, and our review of the exhibits convinces us that Caiton testified concerning Exhibit D-28.

. This conclusion is found on page four of the trial court's reasons for judgment. But see, page three of the reasons, "The by-laws further provide that a director may resign at any time by giving written notice.”

. The issue of Senator Johnson’s current board status is not at issue in the summary proceeding from which appellants appeal herein. Thai issue is pending in # 98-11785, the ordinary proceeding.