813 So.2d 1171 (2002)
RHODES STEEL BUILDINGS, INC., Appellant,
v.
WALKER CONSTRUCTION COMPANY and Winn Parish School Board, Appellee.
Walker Construction Co., Inc., Appellee,
v.
Rhodes Steel Buildings, Inc., Appellant.
Nos. 35,917-CA, 35,918-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
*1173 Donald E. Studer, West Monroe, Counsel for Appellant.
Klotz, Simmons & Brainard, By Kermit E. Simmons, Harry D. Simmons, Shreveport, Counsel for Appellee.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
KOSTELKA, Judge.
In this Public Works Act action, Rhodes Steel Buildings, Inc. ("Rhodes") appeals *1174 two trial court judgments which sustained an exception of prematurity and thereby dismissed its suit to enforce a lien filed against Walker Construction Co. ("Walker"),[1] ordered cancellation of the lien and awarded attorney fees and damages to Walker. Finding error in these judgments, we reverse and remand for further proceedings.

FACTS
On February 1, 2000, Walker, as general contractor for the construction of additions and improvements to the Winnfield High School, entered into a subcontract with Rhodes to provide labor and materials for certain aspects of the project. On February 7, 2001, Rhodes filed a lien for the amount of $17,736.06, pursuant to La. R.S. 38:2242 of the Louisiana Public Works Act, claiming Walker had refused to pay sums due for work on the project. On March 23, 2001, Rhodes instituted a Petition to Enforce Mechanic's Privilege seeking the amounts claimed because of Walker's alleged breach of contract.
On April 5, 2001, Walker excepted to the suit on the grounds of prematurity, arguing that because it had terminated the contract due to Rhodes's alleged nonperformance, the job was not yet completed and a determination of what, if any, amounts were owed could not be made. On these same grounds, Walker filed a separate Petition For Summary Process on May 22, 2001, seeking to cancel the lien and for damages and attorney fees due to Rhodes's refusal to comply with Walker's written demand to cancel the lien in accordance with La. R.S. 38:2242.1.
On August 6, 2001, a hearing on a rule to show cause why the lien should not be cancelled and penalties and attorney fees awarded in Walker's summary process action was conducted simultaneously with a hearing on the prematurity exception.[2]
At the hearing, the trial court heard testimony from Benjamin Rhodes, Sr. ("Mr. Rhodes"), a principle of Rhodes. Mr. Rhodes testified that he, as the representative of Rhodes, and David Walker ("Mr. Walker"), as President of Walker, entered into a contract for Rhodes to perform work on the Winn Parish School Board project. The agreement provided that Rhodes was to submit monthly invoices to Walker for labor and materials by the 25th of the month. Mr. Rhodes stated that his work was delayed because work to be performed by others was not completed timely.
Mr. Rhodes testified that Mr. Walker first thought Rhodes was responsible for the installation of purlins on the project. However, when Mr. Walker realized that purlin installation was not included in Rhodes's contract, he asked Mr. Rhodes for assistance with the task. When Mr. Rhodes indicated it would be expensive for Rhodes to do that work, Mr. Walker agreed to hire Rhodes's employees on a cash basis solely for the installation of purlins at the site. Mr. Rhodes also indicated that Mr. Walker agreed to compensate Rhodes for truck usage on the purlin installation which occurred on July 28 and 29, 2000. Thereafter, on July 31, 2000, Rhodes invoiced Walker for truck usage in the amount of $912.50. Mr. Rhodes indicated his employees had trouble getting paid by Walker for the purlin *1175 installation. He spoke with Mr. Walker who indicated he would not pay the men because they did not do a good job. Mr. Rhodes testified that he paid the men but did not invoice Walker for that amount.
Mr. Rhodes also claimed Mr. Walker agreed to pay Rhodes overtime and truck usage for work done to further the contract on the weekend of July 22 and 23, 2000. Thereafter, on August 2, 2000, Rhodes invoiced Walker for overtime costs and truck usage in the amount of $1,131.24.
Mr. Rhodes also testified that because taxes were not included in the material costs of the contract, Mr. Walker verbally agreed to pay those amounts to Rhodes. Rhodes invoiced Walker for $4,118.48, representing the taxes due.
At the hearing, Rhodes sought to introduce these three invoices into evidence. Upon objection by Walker, however, the court declined to allow admission of the documents into evidence on the grounds they were outside the scope of the original written contract between Rhodes and Walker and that Rhodes failed to establish a proper business records foundation.
Mr. Rhodes also claimed Mr. Walker had not paid him $11,573.84 for labor performed in the month of July under the contract which was invoiced on July 24, 2000, but not paid. The court allowed the introduction of this exhibit into evidence.
Mr. Rhodes testified that he did not complete the project because Walker refused to pay his invoices. Mr. Rhodes claimed he called Mr. Walker regarding the unpaid invoices in the final week of August, 2000. In that conversation, Mr. Walker informed Mr. Rhodes he was not going to pay the invoices. Mr. Rhodes remembered getting a letter from Mr. Walker dated September 5, 2000, canceling the contract. This letter was received by Mr. Rhodes approximately ten days after the telephone conversation in which Mr. Walker told Mr. Rhodes he would not pay him. Mr. Rhodes testified it was Walker's refusal to pay which caused Rhodes to file the lien and suit to enforce it in the amount of $17,736.06the total amount represented by Rhodes's invoices.
Mr. Rhodes also stated that after the installation of the bar joists, he checked the elevations which were not level. He believed the weld plates upon which the bar joists were placed were "up and down" which caused the purlins to be uneven as well. Rhodes did not install the weld plates. Mr. Rhodes pointed out the unevenness of the weld plates to Walker or the job superintendent. Mr. Rhodes felt nothing was done to correct the elevation problem prior to the purlin installation. He suggested that Mr. Walker held him responsible, although not in writing, for the unevenness of the purlins. Mr. Rhodes informed Mr. Walker that the men were Walker's employees during the installation of the purlins.
Mr. Walker also testified at the hearing. He stated he never agreed to pay taxes under the contract nor did he agree to pay additional overtime or truck usage to Rhodes. Mr. Walker claimed it was he who cancelled Rhodes's contract due to Rhodes's nonperformance. He first cancelled the contract verbally and then sent a letter to Rhodes on September 5, 2000 in which he canceled the contract for nonperformance and refusal to correct defective work in a timely manner and invoked Article 10[3] of the contract regarding the unpaid *1176 balances claimed by Rhodes. Mr. Walker testified that Rhodes had incorrectly installed bar joists and when requested to correct the installation, failed to do so because the Rhodes employees did not know what they were doing. Walker was forced to employ an independent contractor to complete the job, to buy materials and use some of Walker's employees to assist in completion of the project. Mr. Walker claimed he never told Mr. Rhodes he would not pay him for the job. At the time of Mr. Walker's testimony, a notice of acceptance of the contract had not been filed. He testified that he was forced to expend $19,710.00 to finish the job Rhodes had not completed.
Mr. Walker also stated he received notice of filing of the lien and that he sent a letter to Rhodes on April 4, 2001 requesting the lien be cancelled because the job had not been completed. Walker also presented evidence regarding the attorney fees expended in defense of the matter.
After considering what it had determined to be admissible evidence, the trial court rendered a written judgment on August 10, 2001 in favor of Walker. Upon declining to consider any evidence of the alleged oral agreements, the trial court determined Walker's written cancellation of the contract on September 5, 2000 triggered the application of Article 10 of the contract provisions. The court found no evidence which established the completion of the project at the time of the hearing and, therefore, no evidence demonstrating the maturity of the claim,[4] i.e., no final accounting of remaining amounts not used in Walker's completion of Rhodes's portion of the project pursuant to Article 10 of the contract. For these reasons, the trial court concluded the lien was improperly and prematurely filed and that Rhodes had unreasonably declined to cancel the lien upon Walker's request. Accordingly, the court ordered cancellation of the lien and awarded Walker $4,500.00 in attorney fees and $5,000.00 in damages for loss of reputation. In a separate judgment based upon the same evidence presented at the hearing, the court sustained Walker's exception of prematurity in the ordinary action and dismissed the suit. This appeal ensued.

DISCUSSION
On appeal, Rhodes urges numerous errors in the trial court's judgments. Specifically, Rhodes urges that the trial court erred in failing to find that Walker first breached the contract by refusing to pay the invoices prior to sending Rhodes a written cancellation of the contract. Moreover, Rhodes asserts the trial court erred in finding its claim had not matured, was improperly filed and in granting Walker's exception of prematurity in the ordinary proceedings. Rhodes also contends the trial court erroneously disallowed evidence of oral modifications of the contract. Finally, Rhodes asserts error in the attorney fee award of $4,500.00 and $5,000.00 in damages for loss of reputation.
Because we find the issue of the admissibility of Rhodes's exhibits pivotal in our ultimate disposition of this matter, we first resolve this claim. As mentioned earlier, the trial court ruled as inadmissible *1177 invoices which represented overtime, truck usage and tax amounts resulting from alleged oral modifications of the original contract between Walker and Rhodes. Specifically, the court found the evidence to be outside the scope of the original contract and that Rhodes had failed to adequately establish a foundation for the admission of the invoices into evidence. The court also rejected the admission into evidence of a summary of the labor performed on the project on these same grounds.
Initially, we find error in the trial court's conclusion that Rhodes had not sufficiently established a foundation for the admission of the documents. At the hearing, Mr. Rhodes demonstrated complete familiarity with the documents which he identified as relating to the contract at issue. He also testified he was the custodian of the documents which formed a part of Rhodes's business records and that he billed for labor and taxes and sent Walker invoices for the amounts. He specifically remembered sending an invoice for work done on July 23 and 24, 2000 to Mr. Walker who called contesting the amount of the bill. Mr. Rhodes then amended the invoice to include only overtime labor costs.
Of course, the party who seeks to introduce written evidence must in some way authenticate it by a qualified witness. A custodian or other qualified witness must explain the record-keeping procedures of the business and be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be introduced. Cole Oil & Tire Co., Inc. v. Davis, 567 So.2d 122 (La.App. 2d Cir.1990); Ruddock v. Jefferson Parish Fire Civil Service Bd., 96-831 (La.App. 5th Cir.01/28/97), 688 So.2d 112. We find that Mr. Rhodes qualified as a proper witness and that his testimony was adequate to establish a business records foundation for the introduction of the excluded evidence. In concluding otherwise, the trial court erred.
Moreover, the law is clear that written construction contracts may be modified by oral contracts and the conduct of the parties even when the written contract contains a provision that change orders must be in writing. Wisinger v. Casten, 550 So.2d 685 (La.App. 2d Cir.1989); Capitol Nursing Home, Inc. v. Nixon, 99-0378 (La.App. 1st Cir.03/31/00), 764 So.2d 1016, writ denied, XXXX-XXXX (La.06/16/00), 765 So.2d 336; Gill Const. Co., Inc. v. Purnell Const. Co., Inc., 99-1979 (La.App. 4th Cir.03/15/00), 756 So.2d 1183; Gravier Co. v. Satellite Business Systems, 519 So.2d 180 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1150 (La.1988); Pelican Electrical Contractors v. Neumeyer, 419 So.2d 1 (La.App. 4th Cir.1982), writ denied, 423 So.2d 1150 (La.1982); Grossie v. Lafayette Const. Co., Inc., 306 So.2d 453 (La.App. 3d Cir.1975), writ denied, 309 So.2d 354 (La.1975).
In this case, the contract between Rhodes and Walker nowhere prohibits oral modification of the written provisions. At the hearing, it was clearly Mr. Rhodes's assertion that he and Mr. Walker had orally modified the agreement. With Mr. Walker's denial of any oral agreements, clearly a dispute exists as to whether an oral modification of the original contract occurred. The jurisprudence amply supports Rhodes's right to prove the contract was so orally modified. Moreover, because La. R.S. 38:2241 only requires contracts in excess of $5,000.00 to be reduced to writing, Rhodes also may show the existence of a separate oral contract. The same is true regarding the claim of overtime and truck usage for the weekend of July 22 and 23, 2000. In rejecting this evidence, the trial court deprived Rhodes of its right to prove the oral agreements.
*1178 On this basis, we find the trial court's rejection of the evidence as being beyond the scope of the original contract to be legal error. See, McLean v. Hunter, 495 So.2d 1298 (La.1986); Hines v. Arkansas Louisiana Gas Co., 613 So.2d 646 (La.App. 2d Cir.1993), writ denied, 617 So.2d 932 (La.1993).
When the improper exclusion or admission of evidence is consequential and interdicts the fact-finding process, the manifest error standard of review is no longer applicable, and the appellate court can make, if possible, its own de novo review of the record. Id. Legal errors are prejudicial when they materially affect the outcome of the case and deprive a party of substantial rights. Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731.
We are constrained to conclude this legal error tainted the entire fact-finding process and the court's ultimate conclusions. Certainly, a substantial portion of Rhodes's case was based upon the amounts allegedly owed on the oral agreements and Walker's breach thereof. As noted above, the failure of the trial court to consider evidence of these agreements prevented Rhodes from proving these facts in court, or said another way, prejudiced Rhodes's right to present its case fully. Such a denial qualifies as a deprivation of substantial rights. Moreover, we are not able to state with any degree of certainty that, had the trial court considered the erroneously excluded evidence and analyzed it according to the correct legal standard, it would have reached the same conclusion in the matter.[5]
Accordingly, we find that in this case, prejudicial legal error skewed the trial court's findings regarding material issues of fact and caused it to pretermit other issues such as a determination of which party breached the contract and the timeliness of the lien under those circumstances. Evans, supra. See also, Levingston Supply Co. v. American Employers' Ins. Co., 216 So.2d 158 (La.App. 1st Cir.1968), writ refused, 253 La. 627, 218 So.2d 902 (1969). Such error clearly deprived Rhodes of substantial rights and prejudiced its day in court.
Although the jurisprudence allows this court to conduct de novo review in a case where legal error taints the fact-finding process and the record is complete, we find the present case an appropriate one for remand.
The record shows that it was Rhodes who first sought to establish the validity of the lien via ordinary proceedings. In Rhodes's pleadings, it alleged Walker's refusal to pay the invoices amounted to an active breach of contract which precipitated the filing of the lien and the resulting suit. Inherent, therefore, in the suit to enforce the lien would have been the necessity of litigating the issue of who first breached the contract and the resultant propriety of the lien, i.e., the merits of the ordinary action. Nevertheless, the trial court ultimately resolved the issue of the propriety of the lien in the summary proceedings instituted by Walker.
La. R.S. 38:2242.1 authorizes the use of summary proceedings to seek damages and attorney fees against one who, without reasonable cause, fails to deliver written authorization to cancel an improperly filed statement of claim or privilege and obtain *1179 a judgment declaring the claim extinguished.
Of course, the law is well settled that the right to use summary proceedings cannot be extended beyond the cases expressly authorized by law. Pittman Const. Co. v. Housing Authority of New Orleans, 248 La. 471, 179 So.2d 900 (1965); Houeye v. St. Helena Parish School Bd., 213 La. 807, 35 So.2d 739 (1948). Moreover, summary proceedings are those conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all of the formalities required in the ordinary proceedings. Clay v. Clay, 389 So.2d 31 (La. 1979); Smith v. Johnson, 99-1513, 99-1514 (La.App. 4th Cir.05/23/01), 789 So.2d 672. Generally, summary proceedings are allowed in instances where the issue to be resolved is narrow and the need for a rapid adjudication is great. Clay, supra.
Interestingly, in this case, the court indicated on the record that it was hearing only the summary proceedings and the exception of prematurity and not the merits of the ordinary proceedings. Nevertheless, as discussed above, in ordering cancellation of the lien and awarding damages and attorney fees in the summary proceedings, the court ultimately concluded that the lien was improperly filed although this issue was first preserved by Rhodes in the ordinary action. Accordingly, despite its contrary statements, the court effectively, and in our opinion prematurely, utilized summary proceedings to determine the merits of the ordinary action. We believe that in this case, due to the obvious contested nature of the dispute, Rhodes's preservation of the issues and right to be heard in ordinary proceedings, the ultimate determination of whether the privilege was improperly filed was an improper use of the summary proceeding authorized by La. R.S. 38:2242.1.[6]
We recognize that Rhodes arguably waived the right to raise the issue of the improper use of summary proceedings by failing to urge a dilatory exception. Martin v. Bonanno, 421 So.2d 359 (La. App. 1st Cir.1982). However, we do not believe that Rhodes should be prejudiced by this omission due to the court's clear statement that the merits of the ordinary action were not before it. Moreover, when coupled with the legal errors which otherwise prejudiced the substantial rights of Rhodes, this improper use of summary proceedings served to deprive Rhodes of the procedural and adjudicatory process to which it is entitled, the right to present its case fully and the observance of the formalities required in the ordinary proceedings. We conclude that in these circumstances, justice is served by a remand of the matter for a new trial rather than de novo review by this court. Therefore, by the authority granted to us in La. C.C.P. art. 2164, to render any judgment which is just, legal and proper upon the record before us, we remand the matter for a new trial in ordinary proceedings[7] which includes the completion of pleadings, discovery and a proper consideration of all relevant and admissible evidence and credibility determinations based upon the previously excluded evidence.[8]
*1180 Likewise, we conclude that the erroneous exclusion of evidence by the trial court also tainted the trial court's ruling on Walker's exception of prematurity in the ordinary proceedings. Of course, a suit is premature if it is brought before the right to enforce the claim sued on has accrued. Clark v. City of Shreveport, 26,638 (La.App.2d Cir.05/10/95), 655 So.2d 617. The question of prematurity must be determined by the state of facts existing at the time the suit is brought. Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2d Cir.1982); Hidalgo v. Wilson Certified Express, Inc., 94-1322 (La.App. 1st Cir.05/14/96), 676 So.2d 114.
In this case, Walker presented the same evidence in proof of the summary proceedings and the exception of prematurity. Clearly, with proper consideration of the erroneously excluded evidence, the facts existing at the time the suit to enforce lien was filed makes the granting of the exception of prematurity improper. As discussed above, the evidence of oral agreements is adequate to preserve issues regarding Walker's possible breach of the contract prior to his written cancellation thereof. It is only upon the determination at trial of this crucial fact, i.e., who first breached the contract, that the issue of the timeliness of the lien can be properly resolved. Such contested issues preclude the pre-trial finding that the suit was prematurely filed. On these grounds, we reverse the judgment granting the exception of prematurity and reinstate the ordinary action.
Of course, this determination precludes our consideration of the remainder of Rhodes's arguments.

CONCLUSION
For the above-stated reasons, we vacate the judgments of the trial court and remand for further proceedings in accordance with this disposition. Costs of this appeal are assessed fully to Walker.
JUDGMENTS REVERSED; REMANDED FOR NEW TRIAL.
NOTES
[1] The Winn Parish School Board was also a named defendant.
[2] Although Rhodes sought to consolidate the two actions and the transcript is entitled as a consolidation, the record before us includes no order officially doing so. For purposes of appeal, the two actions were consolidated.
[3] Article 10 of the contract provided that if the subcontractor at any time refused or neglected to supply sufficient numbers of properly skilled workers or sufficient quantities of materials or failed to perform work covered by the contract with promptness and diligence or failed in the performance of any agreement in the contract, the contractor could terminate the contract and complete the job. The released subcontractor would be entitled to any remaining amounts not used in the completion of the subcontractor's portion of the project.
[4] La. R.S. 38:2242(B) provides in part that any claimant may, after the maturity of his claim, file a sworn statement of the amount due him.
[5] Notably, the court's judgment and reasons for judgment are silent as to the validity of the $11,573.84 (Exhibit E) claimed by Rhodes in the lien for work done under the written contract. Because the court refused to consider any evidence of oral agreements, we are unable to discern whether the court rejected the claim as part of the oral agreement claims or simply neglected to address it.
[6] We note that in a case where the evidence undisputably shows the lien was improperly filed or the issue is uncontested, it is arguable that La. R.S. 38:2242.1 contemplates the use of summary process to determine the propriety of the lien.
[7] See infra, our discussion reversing the exception of prematurity and reinstating the ordinary proceedings.
[8] Notably, the record is also unclear as to whether the actual invoices were ever proffered. While this did not prejudice Rhodes's right to review, because the trial court allowed extensive testimony describing and explaining the exhibits prior to ruling that they were inadmissible, remand is preferred for the trial court to properly consider the actual exhibits. See discussion in Holliday v. Holliday, XXXX-XXXX (La.App. 1st Cir.08/17/01), 795 So.2d 423.