540 So.2d 997 (1989)
Sarah SIMPSON, Individually and as Tutrix of the Estate of her Minor Son, Michael Earl Simpson, Plaintiff-Appellee,
v.
CADDO PARISH SCHOOL BOARD, Harold R. Skyles and State Farm Mutual Automobile Insurance Company, Defendant-Appellant Defendants-Appellees.
Mary L. NETTER, Individually and as Tutrix of the Estate of her Minor Children, Michael W. Netter and Kevin Netter, Plaintiff-Appellee,
v.
CADDO PARISH SCHOOL BOARD, Harold R. Skyles and State Farm Mutual Automobile Insurance Company, Defendant-Appellant Defendants-Appellees.
Nos. 20289-CA, 20290-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
*998 C. William Gerhardt & Associates by William Fabian Kendig, Jr., Shreveport, for plaintiffs-appellees.
Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendant-appellant, Caddo Parish School Bd.
Lunn, Irion, Johnson, Salley & Carlisle by Jack E. Carlisle, Jr., Shreveport, for defendants-appellees, Harold R. Skyles and State Farm Mut.
Before FRED W. JONES, Jr., SEXTON and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In these two consolidated cases, Sarah Simpson and Mary L. Netter sought recovery for injuries sustained by their minor children, passengers on a Caddo Parish school bus which was involved in a slight accident. The incident occurred on February 25, 1987 when the school bus, in attempting to make a right turn onto a narrow side street, made contact with a parked van owned by third party defendant, Peggy Skyles. The van was in a "no parking" zone near the street corner.
At the conclusion of the trial, the court ruled that the sole cause of the accident was the negligence of the school bus driver, and awarded damages in each case against the school board. All demands against Mrs. Skyles and her insurer, State Farm Mutual Automobile Insurance Company, were dismissed. The school board has appealed both awards.
The issues on appeal in both cases are identical. The school board alleges that the trial court erred: 1) in holding that the plaintiffs carried their burden of proof; and 2) in failing to attribute some degree of fault for the accident to Mrs. Skyles. We find no manifest error in the award of damages to the plaintiffs. However, we find the trial court was clearly wrong in not apportioning a measure of fault to Mrs. Skyles.
The facts concerning the accident are undisputed. The driver of the school bus was transporting elementary school students to their homes during the afternoon when the accident occurred. The bus, which was proceeding west on Stoner Avenue in Shreveport, Louisiana, attempted to make a right turn onto Foster Street. Foster is a narrow street which on the day of the accident was lined with cars on both sides. There are "no parking" zones on both sides of Foster adjacent to its intersection with Stoner Avenue. Mrs. Skyles had parked her van in the no parking zone on the right-hand side of Foster. She testified she became aware that she was parked in a no parking area when she exited her van, but nonetheless elected not to move her vehicle.
The school bus driver testified he had observed vehicles illegally parked at this location on previous occasions, and that when a vehicle was parked in the no parking zone on the right side of the street, as the Skyles van was on the day of the accident, it was hard for him to complete his turning. The van was parked closer to the intersection than any of the cars on the left side of the street, according to the driver. He further testified he made the turn on the day of the accident very slowly in an effort to avoid hitting the cars parked in the no parking zones on either side of the street. This testimony was corroborated by a police officer who investigated the accident, and who estimated the speed of the bus at approximately one mile per hour. The bus driver said he was watching the Skyles van out of his side mirror as he attempted to pull past the van. Although the driver stated he did not feel any impact, he admitted he saw the bus make contact with the van. He then slowly came to a stop and parked. After asking the children if they were alright, he got out to report the accident.
The van was not dented or damaged in any way. Similarly, the school bus was not dented. Indeed, the contact between the two vehicles simply transferred yellow paint from the right side of the bus to the left rear bumper of the van.
While no students complained of injuries at the time of the accident, both Mrs. Netter and Mrs. Simpson said their children's behavior was unusual when they arrived *999 home soon after the accident. Mrs. Simpson testified her son Michael Simpson was holding his head to one side. Mrs. Netter testified her son Michael Netter took a bath and lay down, while her son Kevin went to sleep. Kevin stated he had hit his head and neck; Michael Netter complained of his back and neck. Mrs. Netter's testimony is corroborated by that of her daughter, Janis, who said she knew something was wrong when the brothers returned from school that day because they did not engage in their usual fighting and playing with each other. She also testified Michael Netter told her he was feeling bad, and that Kevin lay down on the couch and went to sleep.
Both mothers took their children to see Shreveport general practitioner Dr. A.H. Powell the next day. Dr. Powell testified all three children had muscle spasm and limitations in range of motion. Examination of Michael Netter revealed severe paraspinal spasm in the cervical region, and that he could not turn his head at all to the left and only thirty degrees to the right. The doctor testified he found no indication the child was exaggerating his complaints. Michael Netter's problems seemed, to the doctor, consistent with the history given by the mother that the child was thrown forward and then backward, jerking his neck. The doctor stated, based on reasonable medical certainty, it was more probable than not that Michael's injury was caused by some sort of trauma.
With regard to Kevin Netter, Dr. Powell's diagnosis was muscle spasm and stiffness in the neck. Examination revealed some tenderness in the cervical region and a limitation in range of motion when attempting to turn the head either right or left. Kevin's injuries were found to be less severe than those of his brother. Upon comparing the submitted history, the doctor again noted no inconsistencies as to the physical findings, which he concluded more probably than not were related to trauma.
Dr. Powell's examination of the third child, Michael Simpson, revealed point tenderness in the cervical region with no range of motion upon attempting head turning to the right or to the left. Forward flexion on back bending was said to be only approximately ten degrees from the vertical position. He was diagnosed as having moderately severe muscle spasm in the cervical region as well as the lumbrosacral region. The doctor likewise related this child's condition to the bus accident.
Dr. Powell's testimony was the only expert medical evidence presented at trial. According to that testimony, there were objective signs of injury to all three children on the day following the accident, and the injuries resulted from some type of trauma. All of the children recovered from their injuries in a relatively short period of time. The trial court found, based upon the testimony of the parents of the children, and especially upon the testimony of Dr. Powell, that the plaintiffs carried their burden of proof that the accident did occur, and that the accident was the basis for the injuries complained of by the children.
On the other hand, the trial court apparently gave little weight to the testimony of the children, which was characterized as "at best vague." While all three children testified there was some type of accident, none of them felt an impact. Michael Netter, who was eleven years old at the time of trial, testified that he was thrown backward into his seat and hit the back of his neck on the seat. His brother, Kevin, who was ten years old, said he was thrown forward, striking his head on the back of the seat in front of him. While he felt no impact, he did hear a noise at the time of the accident. Of the three children, Kevin, sitting near the middle of the right side of the bus, was in closest proximity to the point of contact. Notably, Kevin's testimony that the bus was going too fast, and that the front of the bus struck the back of the van, was inconsistent with the way the accident actually occurred.
Michael Simpson, who at eight years of age was the youngest of the three children, remembered nothing about the accident other than the fact it occurred on Foster Street. He did not even remember going to see Dr. Powell.
*1000 The trial court expressly identified causation as a significant issue of the case. Causation is an issue of fact as to which the trial judge's findings cannot be disturbed in the absence of manifest error. Taylor v. State, 431 So.2d 876 (La.App. 2d Cir.1983). Great weight is given to the factual conclusions of the trial court because of its role as the trier of fact which evaluates live witnesses rather than a cold record. Youngblood v. Sanders, 513 So.2d 521 (La. App. 2d Cir.1987).
After reviewing the trial court's factual conclusions with regard to causation and the reasons stated in support thereof, we cannot say on this record that the trial court was clearly wrong. There is no dispute that an accident occurred while the three children were aboard the bus, and the unrebutted medical testimony presented by plaintiffs is that on the next day the three children showed objective signs of injury caused by trauma. Nor is there evidence that any of the three children suffered from any problems prior to the accident. Where an accident victim was in good health before an accident, but shows that after the accident a disabling injury manifested itself, and that there is a reasonable possibility of causal connection between the injury and the accident, it is presumed, subject to rebutting evidence, that the accident caused the injury. Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir. 1981).
Defendants offered no evidence indicating another cause for the children's injuries. Instead, defendants essentially argue on appeal that the contact between the bus and the van was not sufficient to cause the children's injuries. This court has avoided the precedent of attempting to measure an injury in direct proportion to the force of a collision when medical experts and lay witnesses establish that a plaintiff sustained injuries. Seegers v. State Farm Mutual Automobile Insurance Co., 188 So.2d 166 (La.App. 2d Cir. 1966); Boykin, supra.
Before turning to the remaining issue concerning apportionment of the negligence, we note that the trial court, while holding plaintiffs had carried their burden of proof, did not find the children's injuries to be very severe. The awards of $370 to Michael Simpson, $600 to Michael Netter and $320 to Kevin Netter are consistent with the medical testimony, and reflective of the nature of the accident.
As previously indicated, the trial court ruled that the sole cause of the accident was the negligence of the school bus driver. The trial court so held basically because the bus driver, who had traveled the road over a three year period, was not surprised at finding a vehicle parked in the no parking zone, and had made the turn on previous occasions without hitting cars parked in the no parking zone. The trial court thus concluded there was no legal causal relationship between the parking violation and the accident. We find this conclusion clearly wrong.
In Wright v. O'Neal, 427 So.2d 852 (La. 1983), the Louisiana Supreme Court was confronted with a similar, but distinguishable, factual situation. In that case, a New Orleans public service bus, while negotiating a corner, struck the rear of a taxi cab parked in a no parking zone. It was clear that the bus driver's negligence was a legal cause of the accident. The central issue was whether the cab driver was guilty of contributory negligence which was a legal cause of the accident. The Supreme Court found that the cab driver's parking violation was a cause in fact of the accident because the mishap would not have occurred if his vehicle had not been parked in the no parking zone. The court further found that the cab driver violated a duty derived from the parking ordinance, which was imposed to prevent the risk of an accident due to obstruction of an area reasonably necessary for safe and efficient cornering by other vehicles. However, the evidence in that case justified an inference that the encroachment of the cab upon the designated no parking zone did not impede safe and efficient negotiation of the corner. Thus, the evidence did not show that the risk created by the parking violation was a legal cause of the accident.
*1001 Utilizing the same analysis employed in Wright, we conclude that the parking of the Skyles van in the no parking zone plainly was a legal cause of the accident in this case. The accident would not have occurred if Mrs. Skyles had not parked her van in the no parking zone. Nor is there any question that the no parking zone was created to provide an area needed for safe and efficient cornering, and to thereby prevent the risk of an accident. Moreover, the significant factual distinction between this case and Wright is that the encroachment of vehicles upon the no parking zone in the present case did in fact impede negotiation of the corner by the school bus.
The bus driver testified that it was hard for him to complete his turn at Foster Street when cars were parked in the no parking zones, and that he had come close to hitting vehicles when turning there on other occasions. The investigating officer observed that, with cars parked on the left and right side of Foster Street on the day of the accident, the turn the bus driver made was very difficult. The risk of an illegally parked vehicle being involved in an accident with a turning vehicle was, then, plainly contemplated by the legal duty not to park in the Foster Street no parking zone. Thus, the parking of the van in the no parking zone was a proximate cause of the accident.
Although we have given the greatest weight possible to the conclusions of the trial court, for the foregoing reasons we find that all fault for the accident cannot be attributed to the bus driver. The trial court's assignment of fault must be reversed and amended. As noted by the Louisiana Supreme Court in Watson v. State Farm, 469 So.2d 967 (La.1985), once it is determined that the trier of fact is clearly wrong, the appellate court is empowered by the provisions of LSA-C.C.P. Art. 2164 to render any judgment which is just, legal and proper upon the record on appeal. Considering the previously discussed circumstances of this case with regard to the negligence of the parties, we find that the Caddo Parish School Board should be assessed with seventy percent of the fault for the accident, and that Mrs. Skyles should be assessed with the remaining thirty percent. We note also that while plaintiffs apparently never made Mrs. Skyles a defendant in either lawsuit, State Farm was made a defendant in both lawsuits, and Mrs. Skyles was made a third party defendant by the Caddo Parish School Board in both lawsuits.
In accordance with the foregoing reasons, the judgment of the trial court is reversed in part and amended to apportion recovery in accordance with the percentages of negligence of the parties. As noted previously, the negligence attributed to the Caddo Parish School Board is fixed at seventy percent (70%), and the negligence attributed to Peggy Skyles, insured by State Farm, is fixed at thirty percent (30%).
In each case, judgment on the principal demand is awarded against the school board and State Farm, in solido, and judgment on the third party demand is awarded in favor of the school board against State Farm and Mrs. Skyles, in solido, for full indemnification as to any amounts paid by the school board which exceed seventy percent of the total award to the plaintiffs. As so amended, the judgment is affirmed.
All costs, here and below, are assessed seventy percent (70%) to the school board and thirty percent (30%) to Mrs. Skyles and State Farm.
AFFIRMED IN PART, REVERSED IN PART, AMENDED, AND RENDERED AS AMENDED.
SEXTON, J., concurs and assigns written reasons.
SEXTON, Judge, concurring.
I write separately to specifically note the troubling nature of this case.
This accident was the slightest possible one. It was more of a scraping than a contact. The best thing that can be said about the testimony of the "injured" children was the trial court's comment that it was "at best vague." I suggest it is more accurately described as inconsistent and grossly exaggerated. However, the trial *1002 court does not seem to have entirely discounted it.
Further, the findings of the attending physician are inconsistent with the impact and with the subsequent course of treatment. Yet the trial court specifically accepted the medical evidence.
The sums awarded are consistent only with extremely minor injuries and not with the trauma allegedly testified to by the children and the findings of the doctor.
I am very tempted to want to say that the trial court is clearly wrong. However, I don't think I can do so because of what the trial court had to say about the witnesses and in particular the medical evidence.