743 So.2d 943 (1999)
Angela MARSHALL, Individually and as natural tutrix of the minor child, Jaravis Jamall Marshall, Plaintiff-Appellee,
v.
CADDO PARISH SCHOOL BOARD, Defendant-Appellant.
No. 32,373-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1999.
*944 Beard & Sutherland by Fred H. Sutherland, Shreveport, Counsel for Defendant-Appellant.
Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, Counsel for Plaintiff-Appellee.
*945 Before NORRIS, C.J., and CARAWAY and DREW, JJ.
NORRIS, Chief Judge.
Caddo Parish School Board appeals an award of $6,000 in general damages to a four-year-old special education student injured when his school bus struck another car. We affirm the judgment and the quantum.

Facts
Javaris Jamall Marshall was born with spinabifida and hydrocephalus. Spinabifida is a birth defect of the spine that, in Javaris's case, rendered him unable to walk due to paralysis of the lower extremities. Hydrocephalus is an increase of inter-cranial pressure due to accumulation of cerebral spinal fluid; Javaris has a VP shunt implanted into his body from his head to his stomach to drain the fluids into his stomach, relieving pressure and creating a normal pressure situation in the cranium. Due to Javaris's disability, the Caddo Parish School Board provides transportation to and from school by way of a special education bus which is equipped with a wheelchair.
According to Javaris's mother, Angela Marshall, on the morning of March 24, 1997, she carried him to the bus and transferred him to Peggy Nix, a bus aide. Ms. Nix testified that she placed Javaris into the wheelchair and secured him across the legs with a lap belt. Notably, the wheelchair did not have a shoulder harness or other straps to secure his upper torso. After Javaris was placed in the wheelchair, Harold Moss, the bus driver, started to back up the bus when he felt it hit something. He asked Ms. Nix if he had hit anything, and she informed him that he had backed up into a car. Upon inspecting the car, Mr. Moss discovered that the car he had hit belonged to Ms. Marshall. When he went to tell her he had hit her car, Ms. Marshall stated that she needed a police statement because the car actually belonged to her father. Ms. Marshall then went outside to inspect the car and to find out if Javaris was injured. Ms. Marshall testified that she went on the bus and inquired about Javaris's condition. Ms. Marshall stated that Javaris, who is verbal, did not say anything to her, but according to Ms. Nix, he was not injured. Ms. Marshall decided, based on the fact that Javaris was not currently complaining and Ms. Nix's assurances, to allow him to go to school.
Corporal Bobby E. Wilbert, a City of Shreveport police officer, arrived at the scene. He testified that when he entered the bus and asked if anyone was injured, Mr. Moss assured him that no one was injured. Officer Wilbert stated that he never asked Javaris if he was injured, instead relying on Mr. Moss's assurances and the fact that Javaris was not crying. Upon the completion of Officer Wilbert's investigation, Mr. Moss took Javaris to school.
Ms. Marshall testified that upon his return from school, Javaris had a bruise on his forehead and he was complaining that his eyes and head hurt. Notably, Ms. Marshall testified that Javaris did not have a knot on his head that morning when she handed him to Ms. Nix. Javaris's grandfather, Albert Lyles, Jr. testified that later in the day when he came over to check on his grandson and his car, Javaris complained to him about his head and back hurting. Additionally, Mr. Lyles noticed a bruise on Javaris's head which had not been there the day before. Due to concern over the obvious bruising, Ms. Marshall took Javaris to Bossier Medical Center (BMC) where he was seen in the emergency room by Dr. William Dennis. Dr. Dennis testified that Javaris had a minor head contusion. Thereafter, Javaris continued to complain to his mother and grandfather that his back and head hurt. On April 28, 1998, Ms. Marshall took Javaris to LSU Medical Center with concerns that his VP shunt had been dislodged in the accident. LSU Medical Center determined that Javaris's shunt was still in place; however, Javaris's complaints *946 about his back and head did not lessen. Ms. Marshall then took Javaris to Thomas Johnson, a chiropractor, who determined that the accident resulted in an exacerbation of a pre-existing condition. He diagnosed Javaris with acute traumatic lumbar sprain/strain resulting in pain and muscle spasms secondary to a motor vehicle accident. Dr. Johnson proceeded to treat Javaris for his injuries during nine appointments over a two month period.
Ms. Marshall, individually and in her capacity as Javaris's tutrix, filed suit against Caddo Parish School Board for the injuries Javaris suffered as a result of the accident. The trial court found Caddo Parish School Board liable for Javaris's injuries as the result of Mr. Moss negligently backing into a parked car. The court then awarded special damages in the amount of $1,066 to Chiro-Plus, $674 to LSU and $179.90 to BMC, and general damages in the amount of $6,000. Caddo Parish School Board appeals both the judgment and the quantum.

Law and Analysis
Caddo Parish School Board argues that the trial court committed error in finding that Javaris suffered personal injury as a result of the accident. Although there is no discussion of causation in the reasons for judgment, it is apparent from the court's award of damages that it implicitly found Javaris's injuries were caused by the school bus accident. See Brown v. Diversified Hospitality Group, Inc., 96-0413 (La.App. 4th Cir.4/30/97), 694 So.2d 520, writ denied 97-1372 (La.9/5/97), 700 So.2d 514; Sigler v. LSU, 614 So.2d 743 (La.App. 2d Cir.), writ denied 618 So.2d 411 (1993).
A trial court's factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Rodgers v. Brookshire Grocery Co., 29,920 (La.App.2d Cir.10/29/97), 702 So.2d 11; Davis v. Wal-Mart Stores, Inc., 31,542 (La.App.2d Cir. 1/22/99), 726 So.2d 1101. Furthermore, it is the factfinder's duty to weigh credibility and to accept or reject all or part of a witness's testimony. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.05/22/95), 655 So.2d 309; Davis v. Wal-Mart Stores, Inc., supra. As such, where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Rosell, supra; Davis v. Wal-Mart Stores, Inc., supra. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993); Davis v. Wal-Mart Stores, Inc., supra.
The defendant takes the victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct. Wilson v. National Union Fire Ins. Co. of La., 27,702 (La. App.2d Cir.12/6/95), 665 So.2d 1252; Bade v. Wade, 607 So.2d 927 (La.App. 2d Cir. 1992). Further, when a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Id.
The plaintiff bears the burden of proof regarding the causal relationship between the accident and the injuries complained of. Juneau v. Strawmyer, 94-0903 (La.App. 4th Cir.12/15/94), 647 So.2d 1294. Further, a plaintiff must prove causation by a preponderance of the evidence. Morris v. Orleans Parish School Board, 553 So.2d 427 (La.1989). Either direct or circumstantial evidence may constitute a preponderance when it shows causation is more probable than not. Rick v. DOTD, 93-1776, 93-1784 (La.1/14/94), 630 So.2d 1271. Notably, a plaintiffs disability is presumed to have resulted from the accident if, before the accident the injured person was in good health, but subsequently the symptoms of a disabling condition appear and continuously manifest themselves thereafter, provided that the medical evidence establishes a reasonable possibility of causal connection between the accident and the disabling condition. *947 Housley v. Cerise, 579 So.2d 973 (La.1991); Simpson v. Caddo Parish Sch. Bd., 540 So.2d 997 (La.App. 2d Cir.1989); Durkee v. City of Shreveport, 587 So.2d 722 (La. App. 2d Cir.), writ denied, 590 So.2d 68 (La.1991); Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir. 1992).
Although Javaris did have preexisting health problems, his mother and grandfather testified that he did not have headaches and backaches before the school bus accident. Ms. Marshall and Mr. Lyle both testified that Javaris did not have a knot on his forehead before the incident. Javaris's teacher, Melody Simpson, did not recall whether or not he had a bruise at all, but she was certain he did not bruise his forehead while in school. She testified that if he had gotten bruised at school, she would have immediately taken him to the office and called his mother. Additionally, Dr. Dennis testified that Javaris did in fact have a minor contusion on his forehead when Ms. Marshall brought him to BMC the evening of the accident.
Ms. Nix testified that she observed Javaris the entire time, and did not take her eyes off him until after the bus hit the car. Additionally, she testified that although she was standing, she did not even stumble when the bus backed up into the car. Ms. Nix testified that there was absolutely nothing in the vicinity that Javaris could hit his head on, and that he never had a bruise. Notably, Ms. Nix did not testify as to whether or not the wheelchair which Javaris was in could have caused the damage, especially given the fact that Javaris was only strapped in by a belt across his legs, giving his upper torso no support.
Dr. Dennis confirmed that on the evening of March 24, Javaris's forehead was bruised and he received no other information or history to suggest any other incident which would have caused the injury except for the school bus accident. Dr. Johnson testified that, based on watching Javaris's progress and seeing his condition improve over time, that there was no doubt that the pain Javaris was suffering was the result of the accident. The trial judge apparently found Ms. Nix's account that she was watching Javaris the entire time, including that point in time when they hit the car and shortly thereafter so that she could see if Javaris had been hurt, not credible.
Considering that Javaris did not have a bruise prior to the accident, but did afterwards; and Dr. Johnson's testimony that the injuries Javaris had were the result of the accident, we find no manifest error in the trial court's conclusion that Javaris was injured when Mr. Moss hit a parked car. The trial court's apparent, albeit unstated, finding that Javaris's injuries were causally related to the school bus accident is not manifestly erroneous, and therefore affirmed.
Caddo Parish School Board also urges error in an award of excessive general damages and of unnecessary charges for chiropractic treatment.
The tortfeasor is required to pay the victim for the cost of unneeded medical treatment, including chiropractic care, unless the over treatment is attributable to bad faith. Tyler v. Richardson, 476 So.2d 899 (La.App. 2d Cir.), writ denied, 478 So.2d 907 (1985); Starnes v. Caddo Parish School Board, supra.
Caddo Parish School Board argues that the chiropractic treatment of Javaris was unnecessary and inappropriate due to the spinabifida. In support of their argument, Caddo Parish School Board refers to Dr. Dennis's testimony at trial that he would not have attempted to manipulate Javaris as Dr. Thomas did without first consulting a specialist. Dr. Thomas testified that he did manipulations, hot packs, myofascial release massage, and long axis manual traction. He further testified that the manipulations were more of a quick toggle around the joint to stimulate the nerve flow and as such were not inappropriate. Dr. Thomas testified that *948 as a result of the treatment, the muscle spasms in Javaris's back were visibly reduced. Additionally, both Mr. Lyle and Ms. Marshall testified that Javaris's pain had lessened. As such, the record is devoid of any bad faith on the part of Ms. Marshall in seeking the treatment of Dr. Johnson to ease Javaris's pain. We find no error in the trial court's award of the Chiro-Plus charges totaling $1,066.00.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir.9/25/96), 680 So.2d 1333, writs denied, 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063. The trial court has much discretion in the assessment of damages in tort cases. La. C.C.P. 2324.1. The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Ms. Marshall, Mr. Lyle, and Ms. Simpson all testified that Javaris complained of headaches and backaches, though Ms. Simpson was unsure when the complaints started. However, Ms. Marshall and Mr. Lyle testified that Javaris initially complained of his head and back hurting the evening of the school bus accident. As a result of the complaints, Javaris missed three days of school and Ms. Marshall took him to BMC, LSU, and Dr. Johnson. Javaris was first treated by Dr. Johnson, the chiropractor, on May 31, 1997, who testified that, as a result of the accident, Javaris was having problems with his lower back, had been restless and having problems sleeping, and was suffering from muscle spasms. Javaris had a total of ten treatments and was released from Dr. Johnson's care on July 28, 1997. Despite the fact that he was released from care, Mr. Lyle and Ms. Marshall testified that Javaris continues to suffer from backaches. Based on the circumstances of this case, an award of $6,000 for the injuries Javaris suffered is not unreasonable. See Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555 (La.App. 4th Cir.1992) (plaintiff with pre-existing headaches suffered from exacerbation of his headaches as the result of a vehicle accident; $4,500 was not excessive); Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.), writ denied 580 So.2d 923 (1991) (plaintiff suffered from aggravated pre-existing headaches and back strain as a resulting of boxes falling on her head; $7,500 was not excessive); Bourgeois v. Roudolfich, 580 So.2d 699 (La.App. 5th Cir.1991) (plaintiff with pre-existing complaints suffered from headaches, neck pains and dizziness as the result of a vehicular accident with a pedestrian; $5,000 was not excessive). As such, the general damage award is affirmed.

Conclusion
For the reasons expressed herein, the judgment of the trial court is affirmed. Costs are not assessed. La. R.S. 13:4521.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent from the majority's finding that the minor bump to the school bus in this parking lot accident caused injury to the four-year-old. Given Javaris's age and the lack of any sign by him of injury immediately after the impact, Ms. Nix and the bus driver were the only two witnesses who could describe the magnitude of that impact. The driver's testimony indicated that he was unsure that an *949 impact had occurred and had to ask Ms. Nix. Ms. Nix was standing beside Javaris talking to him upon impact. She did not fall down. She did not see Javaris bump anything and did not report that the impact jolted his body. Javaris did not cry or give any sign to his mother moments later when she came on the bus. When the evidence of the impact is examined, the bus sustained no damage, and the automobile which was hit had a slight (but expensive) dent immediately below the driver's side door handle. Finally, on the afternoon of the accident, the emergency room records showed (i) "no irritability" of the child; (ii) "the child is playful, active, alert, smiling, happy and conversational;" and (iii) a 1 × 1 centimeter bruise on the center of Javaris's forehead.[1]
Although the trial court gave no reason for not accepting the testimony of Ms. Nix, the majority concludes that the trial judge apparently found Ms. Nix's account not credible. I disagree that this is an issue of credibility. Ms. Nix's eyewitness account is not disputed by any other witness and is supported by the lack of physical evidence of a forceful collision and any object which could have caused the 1 × 1 centimeter bruise on Javaris's head. Were Ms. Nix and the bus driver lying under oath? In the absence of other evidence and clear inferences, the trial court, which does not explain the reason for not crediting the only eyewitness testimony, is manifestly wrong to ignore it. A credibility call presents the fact finder with a choice, and here, with no evidence to indicate a jarring impact to the person to whom Ms. Nix was speaking, her testimony must be credited.
Finally, with no medical explanation of the purpose of chiropractic treatments upon a spinabifida child some thirty-six days after the accident, I also find the proof of injury lacking. Instead, the only medical doctor who testified concerning his emergency room examination noted that spinabifida would usually cause the loss of feeling to the lower back and lower extremities, and that he would defer to a neurosurgeon or other specialist to diagnosis the existence of a back injury in this case.
There being no reason explaining why Ms. Nix's testimony was discredited and no medical testimony to explain how the slightest movement of a spinabifida child might cause injury to his lower back, I respectfully dissent.
NOTES
[1] The plaintiff reported to the emergency room doctor that the cause of Javaris's bruise was his falling on the floor of the bus.