1PEATROSS, J.
This appeal arises out of a failed real estate transaction. Plaintiffs, Charles and Gwendolyn Turner, contracted with Michael D. Watson d/b/a Watson Construction (“Watson”) to construct a house on a lot to be purchased by Watson. For reasons described infra, the sale of the home to the Turners never closed and Watson ultimately sold the property to a third party. The Turners filed this suit to recoup out-of-pocket expenses they incurred during the building of the home and Watson reconvened seeking damages associated with the failed transaction. The trial court awarded the Turners the sum of $4,271.53 and awarded Watson the sum of $5,684.00. The judgment further provided that the parties bear their respective costs and attorney fees. The Turners appeal. For the reasons stated herein, we affirm.

FACTS

The Turners contacted Watson about building a home for them after learning that a home they liked very much had been constructed by him. The parties executed a buy-sell agreement, which stated a purchase price of $126,000, and further provided, inter alia, that a portion of the funding for the construction would come from the government under the HART program[1]:
4. This contract is contingent upon buyer (VENDEE) receiving gift funds from the HART PROGRAM. Seller (VENDOR) agrees to the terms and conditions of the HART PROGRAM and agrees to incorporate those terms and conditions into this purchase agreement.
| „The buy-sell agreement further provided that the “Act of Sale shall be passed” within six months of the execution of the agreement. It also contained the following clause regarding breach:
16. The parties shall have the right to demand and receive specific performance should either party fail to comply with the terms of this agreement. Any defaulting party agrees to pay all costs and reasonable attorney’s fees.
Watson purchased the lot and began construction of the house. The original closing was set for January 29, 2002, but the construction was not complete. The closing was rescheduled for February 22, 2002, but was delayed due to issues concerning certain repairs or incomplete items that the Turners wanted fixed and/or completed prior to closing. On February 14, 2002, the Turners had the house inspected and provided a copy of the inspection to Watson. There is a dispute as to whether or not Watson made the property available for final inspection prior to February 22. Mr. Turner testified that he had access to the house on February 20, 2002, to have the gas and electricity turned on and that those systems were working, but he stated that he did not do a thorough and final inspection of the rest of the home at that time. In any event, the Turners failed to show at the February 22 closing. The closing was then rescheduled for March 2, 2002. The Turners maintain that they still desired to purchase the home, but at some point between February 22 and March 2, they came to believe that Watson had de *393 cided not to sell them the property. The Turners did not appear at the March 2, 2002 closing. By letter dated March 12, 2002, the Turners were notified that, if the sale did not close within the week, the HART funds would be returned to the government. The sale did not close, 13the HART funds were returned and the Turners filed the instant suit in April.[2]
The Turners maintain that, until they discovered that Watson allegedly did not want to sell the house to them, they wanted to purchase the house, but also wanted Watson to complete certain items as noted by their inspector. Watson maintains that the only items to be completed were noted on his punch list and the home was substantially complete and ready for closing.
Mr. Watson testified that, after the HART funds were returned, he was convinced that the sale to the Turners was not going to close. He then listed the property for sale with a real estate agent and, in July 2002, the property was sold to a third party for $126,500.
As previously stated, the Turners filed this suit seeking reimbursement for fixtures they had paid for (above the bid proposal) and that were installed in the home and Watson reconvened for damages for the Turners’ alleged breach of contract in not closing on the home. Specifically, the trial court found that the HART fund feature of the buy-sell agreement was a resolutory condition that was never met because the funds had to be returned to the government as the sale was not timely closed. The trial court further found, therefore, that the failure to satisfy the resolutory condition terminated the contract. In addition, the trial court noted that neither party was in default under the contract because neither party had demanded the remedy of specific performance as directed by the terms of |4the agreement. The trial court stated that it was bound, therefore, to put the parties as close to the position as possible that they were in prior to execution of the contract. Ultimately, the trial court awarded the Turners $4,271.53 for the fixtures and awarded Watson $4,485, representing the amount he paid in interim financing interest (during the time the home was marketed for sale), and $1,191, representing the loss on the sale to the third party. This appeal ensued.

DISCUSSION

The Turners raise the following three assignments of error on appeal (verbatim):
1. Trial court failed to consider the obvious breach of contract by Michael Watson said breach occurring for arbitrary reasons.
2. Trial court failed to give sufficient weight to the testimony of the actual participants of the breach of contract by Watson.
3. Trial court ruling was clearly wrong when viewed through the facts and evidence produced at trial.
Each of these assignments involves the central issue of whether or not the trial court erred in awarding damages to Watson, which offset the award to the Turners and yielded a net award in Watson’s favor of $1,412.47. We find no reversible error in the trial court’s conclusions.
First, we find no error in the trial court’s legal conclusion that the failure of the HART fund clause in the contract, operating as a resolutory condition, terminated the contract between the parties. The gift of HART funds to the Turners *394 was a primary consideration or cause of this buy-sell agreement and the agreement unambiguously provides that sale was conditioned on the receipt of said funds. When the sale did not timely close |sand the HART funds were rescinded by the government, the buy-sell agreement was terminated. This left Watson free to market and sell the property to a third party.
When appellate review is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Sport Tech, Inc. v. SFI Mfg., Inc., 36,413 (La.App. 2d Cir.12/20/02), 838 So.2d 807, writ denied, 03-0526 (La.4/25/03), 842 So.2d 405. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. Id., citing Lawrence v. Terral Seed, Inc., 35,019 (La.App. 2d Cir.9/26/01), 796 So.2d 115, writ denied, 01-3134 (La.2/1/02), 808 So.2d 341 and Spohrer v. Spohrer, 610 So.2d 849 (La.App. 1st Cir.1992). Again, we find no legal error in the trial court’s determination that the condition was not satisfied and, therefore, that the agreement was terminated.
Likewise, we find no error in the conclusion that neither party was placed in default under the buy-sell agreement, as neither party requested specific performance as provided in paragraph sixteen of the agreement. With no party in default, the provision regarding attorney fees and costs to be paid by the “defaulting party” was not triggered. As such, the trial court was correct in refusing to include such amounts in the judgment.
Next, we find that the testimony and record in this case adequately support the trial court’s factual findings and awards of damages in this case. Unlike contract interpretation, a trial court’s factual findings are accorded great weight and will not be disturbed on appeal absent manifest error. In Rosell v. ESCO, 549 So.2d 840 (La.1989). It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness’s testimony. Marshall v. Caddo Parish School Board, 32,373 (La.App. 2d Cir.10/29/99), 743 So.2d 943. Where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Rosell, supra.
The monetary awards in this case reflect the trial court’s finding that, once the buy-sell agreement terminated, each party was left damaged in some way. The award to the Turners adequately compensated them for out-of-pocket expenses in the amount sought, and the award to Watson represents his cost of listing the property and interim interest. While this result is slightly in favor of Watson, we can find no manifest error in the trial court’s awards.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed at the cost of Plaintiff/Appellants, Charles A. Turner and Gwendolyn S. Turner.
AFFIRMED.

. From the testimony, this court gleans that the HART program is one whereby the government agrees to gift a certain amount of funds to qualified home buyers to be deemed the buyer's down payment. The seller increases the selling price by this amount and then returns the HART funds back to the government after the close of the sale. This process is intended to aid first-time home buyers in purchasing homes with no out-of-pocket down payment.

. Mr. Turner denied having knowledge of the rescheduled closing date of March 2, 2002. He acknowledged, however, that he did receive notice that the HART funds would be recalled if the sale did not close within the week of that notice.