NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-48

ESTATE OF GEORGE SALICOS, ET AL.

VERSUS

TREVOR WYATT RICHARD

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-997
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Candyce G. Perret, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

AFFIRMED.

**Annette Fuller Roach**
**Michael Roach**
**Roach & Roach, APLC**
**Post Office Box 1747**
**Lake Charles, LA   70602**
**(337) 436-2900**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Estate of George Salicos through Karen Salico, Administratrix**
     **Karen Salicos**

**Walter Marshall Sanchez**
**The Sanchez Law Firm, L.L.C.**
**1200 Ryan Street**
**Lake Charles, LA   70601**
**(337) 433-4405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Trevor Wyatt Richard**

**PERRET, Judge.**

This appeal originates from a suit for breach of contract between George Salicos, deceased, and Trevor Richard, Appellee-Defendant. After a trial on the merits, the trial court rendered judgment in favor of Appellee, dismissing Appellants' demands with prejudice. Thereafter, the trial court denied Appellants' motion for new trial. On appeal, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND:**

George Salicos owned and operated Cajun Deelite, LLC ("Cajun Deelite"), which contracted with local businesses to provide and service frozen drink machines. Based on the record, Mr. Salicos came into some financial troubles and decided to sell Cajun Deelite's equipment and customer accounts. It is undisputed that Mr. Salicos and Appellee signed a Bill of Sale on January 28, 2011, wherein Mr. Salicos sold, and Appellee agreed to buy, "46-Frozen Drink Machines, Replacement parts, Syrup Inventory, [and] Existing Customer Accounts (Goodwill)" for a total of $125,000.00. Appellee was to make an initial $5,000.00 payment and then pay the balance in thirty $4,000.00 installments due on the first of each month, beginning on March 1, 2011. The parties agree that the initial down payment as well as payments until July 1, 2011, were made.

The parties further agree that an Addendum to Bill of Sale was signed on July 1, 2011, providing for the potential amendment of the original Bill of Sale. In the Addendum, the parties acknowledge that $104,000.00 remains as a balance owed by Appellee. However, in the Addendum Mr. Salicos offers Appellee a discount of $30,000.00 if he "can obtain the necessary financing from a lending institution, be that institution a public bank, public lender, or from private financing to pay the total sum of new price." The Addendum continues: "New sale

price if Buyer is able to obtain financing will be Seventy-Four Thousand Dollars ($74,000)." It is undisputed that Appellee was unable to obtain financing for $74,000.00. These facts, as mentioned above, appear to be all that the parties agree on regarding the sale.

Mr. Salicos died in February of 2012, without notifying his wife of his financial troubles or that he sold Cajun Deelite's equipment and customer accounts to Appellee. Following his death, Mrs. Salicos found two notes indicating Appellee owed Mr. Salicos either $50,400.00 or $50,600.00 for the January 2011 sale. The notes were not dated. After a demand was made on Appellee, Mrs. Salicos initiated this lawsuit for breach of contract as the appointed administratrix of Mr. Salicos's estate, as well as in her own right.

Appellee answered the petition and set forth the affirmative defense of extinguishment. Appellee asserted that Mr. Salicos approached him regarding the sale of Cajun Deelite equipment and accounts due to his financial distress. Appellee further asserted that, after the Bill of Sale was entered, it was Mr. Salicos who again approached Appellee in July 2011, seeking to discount the sale price to quickly obtain funds. In addition to the Addendum, Appellee asserts that his father, Preston Richard, executed a loan document with Mr. Salicos, lending him $8,000.00. When Appellee could not get approved for the discounted sum, Mr. Salicos provided Appellee a banking contact. Thereafter, Appellee was approved for financing but could not obtain the discounted sale price Mr. Salicos sought. Despite this fact, Appellee asserted that on October 28, 2011, Mr. Salicos accepted a $32,000.00 check,[1] $3,500.00 in cash,[2] and permitted Appellee to pay off his debt

_____

[1] The returned check was admitted into evidence. The check was written out to Mr. Salicos and contained in the memo section: "purchase of Cajun Deelite/$3,5000.00 Balance

to Preston Richard in the amount of $19,000.00,[3] all in full satisfaction and extinguishment of the Bill of Sale. Appellee concludes: "The actions of defendant on October 28, 2011[,] not only extinguished his obligation due Salicos originating in the Addendum to Bill of Sale, but also extinguished the obligations due Preston Richard by Salicos."

Appellee further testified at trial regarding the Loan Agreement, which was entered into evidence. Under the agreement, Preston Richard would loan Mr. Salicos $8,000.00 "along with [Appellee's] payment of Four Thousand Dollars ($4,000)." Appellee testified that he does not recall if the $4,000.00 was in addition to the July 1st monthly payment that was due. The Loan Agreement continues:

> Borrower [Mr. Salicos] agrees that upon [Appellee's] obtainment of financing for the total sum of Seventy-Four Thousand Dollars ($74,000) from lending institution which will be paid to [Mr. Salicos] to satisfy the ADDENDUM TO BILL OF SALE. Borrower shall give to Lender [Preston Richard] the total sum of Nineteen Thousand Dollars ($19,000) in a single payment within two weeks of receiving funds from lending institution.

> If financing is not obtained by [Appellee] from lending institution by any fault of Borrower, Borrower shall in return be responsible for full payment in the amount of Twelve Thousand Dollars ($12,000) to Lender. Borrower agrees that he has fully disclosed all information pertaining to BILL OF SALE with [Appellee].

---

remaining (equipment only)." The check was endorsed by Mr. Salicos as well as by another signature.

[2] Appellee admitted into evidence a check written out to him in the amount of $3,300.00, which he testified he cashed and gave the amount plus an additional $200.00 cash to Mr. Salicos on October 28, 2011.

[3] A check from Appellee to his mother was admitted into evidence and contained in the memo section: "Payoff for George Salicos debt." Appellee testified that because Mr. Salicos failed to pay his parents back before, Mr. Salicos permitted Appellee to write the check directly to Appellee's parents on his behalf.

Although Appellee alleges that he paid Mr. Salicos's debt to Preston Richard in the sum of $19,000.00, he testified that this total was for the $12,000.00 discussed in the last paragraph of the Loan Agreement plus $7,000.00 that Mr. Salicos owed his parents for a prior unpaid loan.

Mrs. Salicos testified at trial that she was unaware of her husband's financial problems and unaware of any agreements between Mr. Salicos and Appellee until after Mr. Salicos's death. On the day of his death, Mrs. Salicos found two undated notes on his office desk. One note stated, "If you . . . collect from Trevor [Appellee] it will clear all my debt's." That note continued on page 2, "I sold Cajun Deelite machines Feb 2011 for 125,000.00[.] Trevor has paid $74,400[.] He owes $50,400.00[.] I told him if he paid off total loan I would give him 30,000 off[.] He did not pay off, still owes $50,400.00." The second note admitted Mr. Salicos's financial troubles and acknowledged the Bill of Sale entered with Appellee: "About four years ago I got behind. Since then I have been losing money. I have went as far as I can go. I sold Cajun Deelite to Trevor last January, he has paid on acc. Still owes 50,600." The note continues to detail additional accounts and policies that Mrs. Salicos may be able to collect on to pay off Mr. Salicos's debt and their house. Mrs. Salicos further testified that Appellee came to her house after Mr. Salicos's death and admitted that he owed $19,500.00 for the sale, though Appellee denied he made this admission.

Following a bench trial, the trial court concluded Appellee did not breach his contract with Mr. Salicos. In written reasons, the trial court concludes, "The Court believes that the Sale of the Business and attachments was completed in October, 2011." The trial court's reasons are telling of the confusion in this business transaction:

4

The consistent, common theme in all of the transactions between Salicos and Richard is that Salicos initially wanted, and contracted to sell his "business" to Richard for $125,000.00. But in relatively short order Salicos himself sought to alter the terms of the Bill of Sale apparently because of a rapidly deteriorating financial collapse in his personal/business life. Within six months he sought to reduce the agreed upon sale price to hasten the receipt of cash which ultimately led to Richard, by October, apparently paying to, or for Salicos, $32,000.00 directly, $19,000.00 for repayment of the loans to Richard's family, and yet another $3,500.00 ($3,300.00 by check and $200.00 cash). There were no further payments to Salicos beyond October, 2011.

It is without dispute that Richard has not paid Salicos or his estate $125,000.00. How much was actually paid by Richard to, or on behalf of, Salicos is uncertain. Salicos' record keeping, if you will, was suspect, vague[,] and confusing. Even the final "accounting(s)" submitted into the record at the trial reflect uncertainty of exactly how much Richard owed at the time of Salicos' death – one has $50,400.00, the other $50,600.00. Salicos #2 additionally reflects "TREVOR HAS PAID $74,400.00".

Not only is this court tasked with determining if in fact the plaintiff has proven that the defendant, Richard, owes a remaining debt to the Estate of George Salicos on the Bill of Sale executed on January 28, 2011, but whether or not the Bill of Sale – contract – had been altered by subsequent Agreements, either written or oral, either reducing the amount owed, or even completely eliminating same.

The burden of proof is on the plaintiff to prove more probable than not that a debt owed by the defendant, Richard is due and owing and in what amount. That Richard did not pay Salicos all of the $125,000.00 agree upon is without dispute. Has Richard paid Salicos prior to his death what Salicos wanted to satisfy the debt at the time of their last transaction, say in October, 2011? This court believes so, more probably than not.

(Footnotes omitted.)

Appellants filed a motion for new trial, asserting that the trial court improperly placed the burden of proving the amount owed on Appellants; thus, a new trial was warranted. The trial court denied the motion on May 14, 2020. This timely appeal followed.

5

Appellants assert three assignments of error on appeal: (1) the trial court erred in denying Appellants' motion for new trial; (2) the trial court erred in placing the burden of proving the amount of the balance due on the Bill of Sale on Appellants; and (3) the trial court erred in finding that the obligation between Mr. Salicos and Appellee was satisfied in full, modified, or extinguished.

**DISCUSSION:**

The first two assignments of error are discussed together as Appellants' reason for seeking a new trial was to "present reargument on the burden of proof and consideration of the proper burdens by the court." Appellants argue that they were only required to prove the existence of the obligation and that the burden then shifted to Appellee to prove the amount paid or remaining on the obligation or that the obligation had been extinguished. However, Appellants assert that the trial court's written reasons disclose that the court burdened Appellants with proving how much is remaining on the obligation. Appellants specifically point to the following comment in support of their allegation: "The burden of proof is on the plaintiff to prove more probable than not that a debt was owed by the defendant, Richard[,] is due and owing and in what amount."

"Applying the wrong burden of proof is not only an incorrect application of the law, it is inherently prejudicial because it casts a more onerous standard than the law requires on one of the parties." *Leger v. Leger*, 03-419, p. 2 (La.App. 3 Cir. 7/2/03), 854 So.2d 955, 957. Thus, if the trial court improperly placed the burden of proof on Appellants, the court's factual findings are no longer entitled to a manifest error review, and this court performs a de novo review of the record. *See Id*.; *see also Kinnett v. Kinnett*, 17-625 (La.App. 5 Cir. 8/6/20), 302 So.3d 157, *writs granted*, 20-1134, 20-1143, 20-1156 (La. 2/9/21), 309 So.3d 735, 738.

6

Additionally, "[w]hile an appeal is taken from the judgment, not the trial court's reasons for judgment, a trial court's oral or written reasons may be considered in determining whether the court committed legal error." *Kinnett*, 302 So.3d. at 173.

Louisiana Civil Code Article 1831 sets forth the burden of proof for proving an obligation:

> A party who demands performance of an obligation must prove the existence of the obligation.
>
> A party who asserts that an obligation is null, or that it has been modified or extinguished must prove the facts or acts giving rise to the nullity, modification, or extinction.

Thus, Appellants are correct in that once the existence of the obligation was established, the burden of proving its nullity, modification, or extinction shifted to Appellee. However, Appellant is incorrect in concluding that the trial court erred. In fact, our court has explained, "The burden of going forward with evidence is initially on the plaintiff. When he establishes a prima facie case of the existence of the obligation, the burden shifts to the defendant. If the defendant casts doubt upon the reality of the obligation, the burden shifts back to the plaintiff." *Artificial Lift, Inc. v. Prod. Specialties, Inc.*, 626 So.2d 859, 862 (La.App. 3 Cir. 1993), *writ denied*, 634 So.2d 394 (La.1994).

The trial court recognized that Appellants proved the existence of the obligation between the parties. The trial court also recognized that Appellee was unable to obtain financing to activate the Addendum. The trial court further recognized that the evidence from both parties resulted in uncertainty regarding how much Appellee actually paid. However, how much Appellee paid or what was left on the obligation is not the issue the trial court decided. Instead, the trial court agreed with Appellee's affirmative defense of extinguishment, finding the

obligation was modified and/or extinguished in October 2011, wherein Mr. Salicos accepted payments in full satisfaction of the obligation. The trial court recognized it was not only "tasked with determining if in fact the plaintiff has proven that the defendant, Richard, owes a remaining debt to the Estate of George Salicos on the Bill of Sale . . ., *but whether or not the Bill of Sale – contract – had been altered by subsequent Agreements, either written or oral, either reducing the amount owed, or even completely eliminating same*." (emphasis added).

We find that, even if the trial court believed that it was Appellants' burden to prove not only the existence of an obligation, but also the amount of the remaining debt, doing so was harmless error. The trial court's decision did not depend on determining the total amount paid by Appellee. Such a decision was unnecessary after finding that Appellee "paid Salicos prior to his death what Salicos wanted to satisfy the debt at the time of their last transaction[.]"

In summation, the trial court agreed Appellants proved the existence of the obligation and even noted the original agreement was not in dispute. The trial court then found Appellee carried his burden in proving that obligation was ultimately extinguished. The trial court complied with La.Civ.Code art. 1831. We find no merit to Appellants' first and second assignments of error.

In their third assignment of error, Appellants assert that the trial court erred in its ultimate finding that no obligation remained between Appellee and Mr. Salicos. In support of their argument, Appellants contend that Appellee did not prove that he and Mr. Salicos entered an oral contract that extinguished or amended the terms of the original Bill of Sale. To prove an oral contract, Appellants argue, Appellee was required to comply with the mandate of La.Civ.Code art. 1846 requiring corroborating circumstances in addition to his own

testimony. Being contrary to the men's normal practices (the sale and addendum were both in writing) and pursuant to La.Civ.Code art. 1846, Appellants reason that Appellee was required to prove the existence of the oral contract with other corroborating circumstances in addition to his self-serving testimony, which Appellants assert he did not do.

However, Appellee contends that once the original obligation was established by Appellants, the burden shifted to him, and he was only required to prove that the original Bill of Sale was modified or extinguished by "facts or acts giving rise to the nullity, modification, or extinction." La.Civ.Code art. 1831. Alternatively, Appellee asserts that, although he was not required to provide corroborating circumstances, he did so anyway. For instance, Appellee points to the payment of $32,000.00 in October that was not otherwise due as circumstances corroborating his testimony that the original contract was modified and extinguished.

The determination of the existence or modification of an obligation is a factual determination made by the trier of fact. *See Dubois Const. Co. v. Mancla Const. Co. Inc.*, 39,794 (La.App. 2 Cir. 6/29/05), 907 So.2d 855; *Lantech Const. Co., L.L.C. v. Speed*, 08-811 (La.App. 5 Cir. 5/26/09), 15 So.3d 289. On appeal, factual determinations are reviewed under the manifest error/clearly wrong standard of review.

> Where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel its own evaluations and inferences are equally reasonable. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Harrison v. Gore*, 27,254 (La.App.2d Cir.8/23/95), 660 So.2d 563, *writ denied*, 95–2347 (La.12/8/95), 664 So.2d 426; *Gardner v. McDonald*, 27,303 (La.App.2d Cir.8/23/95), 660 So.2d 107, *writ denied*, 95–2349 (La.12/15/95), 664 So.2d 453. Likewise, reasonable evaluations of credibility should not be disturbed on review. *Marshall v. Caddo*

*Parish School Board*, 32,373 (La.App.2d Cir.10/29/99), 743 So.2d 943. It is the factfinder's duty to weigh credibility and accept or reject all or part of a witness' testimony. *Id*. Furthermore, when findings of fact are based on determinations of credibility of witnesses, the manifest error-clearly wrong standard mandates great deference to the determinations made by the trial court. *West v. Williams*, 30,842 (La.App.2d Cir.8/19/98), 717 So.2d 1224. If the trial court's findings are reasonable when the record is reviewed in its entirety, the appellate court may not reverse them. *Fowler v. Wal–Mart Stores, Inc.*, 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.

*O'Glee v. Whitlow*, 32,955, pp. 3–4 (La.App. 2 Cir. 4/7/00), 756 So.2d 1288, 1291.

In *Scott v. Bank of Coushatta*, 512 So.2d 356, 360 (La.1987), the supreme court explained the various ways to extinguish obligations:

A civilian obligation may be extinguished by payment, La.Civ.Code Ann. Art. 1854 (West 1987), novation, [La.Civ.Code] art. 1879, or remission, [La.Civ.Code] art. 1888. The extinction of an obligation may also result from acts of the creditor which, under the factual circumstances in question, evidence intent to release the debtor. *Succession of Foerster*, 9 So. 17 (La.1891).

Additionally, in *Lantech Construction Co., L.L.C.*, 15 So.3d at 293-94 (footnotes omitted), the fifth circuit summarized the code articles pertaining to proving obligations and the modification of existing obligations:

A written contract is the law between the parties, and the parties will be held to full performance of the obligations flowing from their contract. [La.Civ.Code art.1983; *Aqua Pool Renovations, Inc. v. Paradise Manor Community Club, Inc.*, 04-119 (La.App. 5 Cir. 7/27/04), 880 So.2d 875.] However, the law is clear that written contracts may be modified by oral contracts and the conduct of the parties . . . . [*Id.*; *Rhodes Steel Buildings, Inc. v. Walker Const. Co.*, 35,917 (La.App. 2 Cir. 4/3/02), 813 So.2d 1171, 1177.] Modification of a written agreement can be presumed by silence, inaction, or implication. [*Aqua Pool Renovations, supra*; *Cajun Constructors, Inc. v. Fleming Const. Co., Inc.*, 05-2003 (La.App. 1 Cir. 11/15/06), 951 So.2d 208, *writ denied*, 07-420 (La.4/5/07), 954 So.2d 146.] The party who asserts that an obligation has been modified must prove by a preponderance of the evidence facts or acts giving rise to the modification. [La.Civ.Code art. 1831; *Aqua Pool Renovations, supra*.]. It is a question of fact, therefore, as to whether there were oral agreements that modified the written contract. [*Cajun Constructors, supra*.]. Oral modifications alleged to be in excess of $500 must be proved by at least one "credible witness" and "other

> corroborating circumstances." Only general corroboration is required. [*Peter Vicari Gen. Contractor, Inc. v. St. Pierre*, 02-250 (La.App. 5 Cir.10/16/02), 831 So.2d 296.] Parol evidence is admissible for this purpose. [*Id.*]

The fifth circuit has further noted that "[c]orroborating circumstances must come from a source other than the plaintiff. . . . The question of whether evidence presented is sufficient to corroborate a claim under [La.Civ.Code art.] 1846 is a finding of fact to made by the trier or fact[.]" *Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc.*, 98-1144, pp. 5-6 (La.App. 5 Cir. 3/10/99), 735 So.2d 41, 43. While testimonial evidence cannot "negate or vary the contents of an authentic act[,]" it may "prove that the written act was modified by a subsequent and valid oral agreement." La.Civ.Code art. 1848. Based on the foregoing, we agree that Appellee was required to prove any oral modifications to the original sale contract by one credible witness and general corroborating circumstances, or that the acts of Mr. Salicos evidence his intent to release Appellee.

In addition to his own testimony, Appellee offered evidence that Mr. Salicos was in urgent need of money. The Addendum shows that Mr. Salicos agreed to discount the sale by a whopping $30,000.00 if Appellee could provide the remainder of the funds owed in a lump sum. The Loan Agreement between Mr. Salicos and Preston Richard also supports the conclusion that Mr. Salicos was making every attempt to obtain capital. Furthermore, Mr. Salicos's endorsement is on the $32,000.00 check, dated October 28, 2011, which notes in the memo, "3,500.00 balance remaining." That same day, Appellee wrote himself a check from his business account in the amount of $3,300.00, which was cashed. Appellee testified that Mr. Salicos was given those funds, plus an additional $200.00 in cash, totaling the "remaining" $3,500.00. The check from Appellee to

11

his mother for repayment of Mr. Salicos's loan is also dated October 28, 2011. All three checks were submitted into evidence.

In addition to these documents, Appellee testified regarding the October events:

Q.     And when you went to the [banking] institution he [Mr. Salicos] identified for you, was he aware of the limitations on what funds you could borrow to pay him off to give him funds in his hand at that time?

A.     Yes.

Q.     And did he accept that?

A.     Yes.

Q.     The memo on it [the $32,000.00 check] which talks about how much you were paying him on Cajun Delight [sic] was on it at the time that you wrote it and that he endorsed it.  Correct?

A.     Yes.

Q.     And was that consistent with what you and he agreed that day when those checks were written?

A.     Yes.

Q.     Whatever he did with that check for [$]32,000[.00] that went someplace else, it did not go in his hand, did it?

A.     I put it in his hand and he left Pappy's parking lot, I don't know where he went.

Q.     But it was endorsed some place else.  Correct?

A.     Yes.

Q.     But the monies that you talked of, the $3300[.00] check and the cash, did you pay that to him as part of your new agreement - -

A.     Yes.

Q.     - - to resolve what you owed him.

A.     Yes.

After the large payment on October 28, 2011, alleged to be evidenced by the three separate checks written on the same day, Appellee testified that he continued to have lunch as normal with Mr. Salicos every week until his death, yet never made another payment on the Bill of Sale. While Appellants reason that no payment was due in the months following October because Appellee paid several months in advance, Appellee maintains that he had no issue making the normal monthly payments and that it was Mr. Salicos who requested the lump sum payment.

Appellee also offered the testimony of Michael Blake Hale. Mr. Hale testified that he often had lunch with Mr. Salicos and spoke with him on the phone. At some point Mr. Hale learned of the Bill of Sale between Mr. Salicos and Appellee, though his memory of when he learned this information does not align with the dates in evidence. Mr. Hale was under the impression that the business deal between Mr. Salicos and Appellee was concluded:

> A.    And based on our conversation at that lunch it was implied to me that - - you know it was end of the rope or the end of the road, and he needed to face up to Ms. Salicos. That's my understanding of - - it was pretty clear.
>
> Q.    From your discussions with him did you understand that he had been paid by Trevor for the business?
>
> A.    Yes. That was the reason for his mood that day was, there were no more monthly payments, it'd come to a close. . . .
>
> Q.    So from what he told you at that point, he had finalized his arrangement and received his last funds that he believed he was entitled from Trevor. Correct?
>
> A.    Yes. And he added, if I was to sell it and - - you know, he did. But if I was to sell it I wouldn't sell it to anybody but Trevor, he's a good young man.

Q. So from his attitude in speaking about Trevor, what kind of an attitude did he appear? Was he favorable to Trevor, or did he have any animosity directed to him, from your assessment of his - -

A. Extremely favorable.

. . . .

Q. Do you have any idea - - if you can recall - - approximately how long after you had this lunch in which he disclosed the conclusion of those payments with Trevor, before he passed away?

A. What I do - - I couldn't say. Probably within the year would be my best guess.

The trial court acknowledged the extent that Mr. Hale's testimony proved useful in its written reasons:

The testimony by Blake Hale, a friend of Salicos, basically only reinforces the apparent financial difficulty Salicos was experiencing prior to his death and the efforts he was making to amass as much cash as he could to address his overall debt situation. Inasmuch as Blake Hale was uncertain at [sic] to when the purported conversation he had with Salicos about the sale of Cajun Deelite to Richard, one cannot be even remotely sure as to what Salicos could have been referring to – the sale of the business to Richard in January, 2011?; the Addendum to Bill of Sale and Loan Agreement in July, 2011?; the receipt of monies from Richard in October, 2011? All of these dates were within a year or close to a year before Salicos' death. Consequently, the Court cannot ascertain with any amount of certainty which finalization, if any, Salicos may have been referring to.

While the trial court could not determine what "finalization" was being discussed, we note that the trial court does not specifically disregard Mr. Hale's understanding that Mr. Salicos was not entitled to any additional payments from Appellee.

Appellants' evidence, the notes left behind by Mr. Salicos, also further the conclusion that Mr. Salicos was in a bad financial situation and was trying to obtain capital. Specifically, one note stated: "About four years ago I got behind. Since then I have been losing money. I have went as far as I can go." The notes

also contain information regarding Mr. Salicos's debts and unsuccessful attempts to obtain additional funds: "I tried to buy another 50,000 ins [and] was rejected."

Although Appellants point to Mr. Salicos's notation that Appellee owes a remaining balance, and thus argue the notes demonstrate Mr. Salicos's belief that the agreement with Appellee was not extinguished, we note that the notes are not dated. There is no evidence in the record indicating when the notes were written.

Additionally, the amount Mr. Salicos alleges Appellee paid and still owes is not supported by the evidence. A clear accounting of the transactions between Appellee and Mr. Salicos does not appear in the record. Attempts at calculations based on various combinations of the numbers in evidence do not amount to any of the totals presented in Mr. Salicos's notes. If, as stated in Mr. Salicos's note, Appellee "paid $74,400.00[,]" then he would, in fact, owe $50,600.00 of the original sale price of $125,000.00, as indicated in that same note. However, no combination of the evidence amounts to payments totaling $74,400.00. We also note that Appellants' petition alleges Appellee made only $60,400.00 in payments, yet claims Appellee is indebted to Appellants for $50,600.00 (which would total $111,000.00).

Appellants assert that Appellee was required to provide evidence corroborating his testimony, but that the corroborating evidence could not come from Appellee. However, after a review of the record, we find that evidence in this case aside from Appellee's testimony does exist to corroborate Appellee's testimony, including copies of checks, the Bill of Sale and addendum, testimony from Mr. Hale, and the notes written by Mr. Salicos.

After taking the evidence under advisement, the trial court concluded that a modification or extinction of the obligation occurred, finding that Appellee owes

15

no additional funds to Appellants for the sale of Cajun Deelite equipment and customer accounts. The trial court reasoned that Mr. Salicos was desperate for cash and, therefore, accepted a reduced lump sum in full payment of the Bill of Sale. Based on the record, we cannot say that the trial court erred in this conclusion. The facts as presented generally corroborate Appellee's testimony that Mr. Salicos was willing to accept a lesser lump sum in full payment of the Bill of Sale due to his dire financial situation. We cannot say that the trial court committed manifest error in its factual findings.

**DECREE:**

For the forgoing reasons, the judgment of the trial court is affirmed at Appellants' cost.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.